■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD E. McGUFFIN, Appellant.—Appeal from a judgment of the County Court of Saratoga County, rendered April 1, 1976, convicting defendant on his plea of guilty to the crime of criminal possession of a weapon in the fourth degree and reckless endangerment in the first degree. Defendant's former girlfriend was shot in front of her home about 1:30 in the morning on July 7, 1975. The police arrived and sent for emergency aid. Defendant drove up to the scene in an automobile and asked what was going on. When informed of the shooting, defendant went to the hospital to visit the victim. At the hospital, defendant volunteered to a police officer that "he had gotten a phone call that somebody had shot Jean and he had no idea who that was". Patrolman St. John, curious about this tale, requested the defendant to accompany him to the police station to supply information regarding the incident. Defendant agreed. South Glens Falls Police Chief Cleland questioned defendant at the station house. After some questions, Cleland began to suspect defendant of the crime, read him his *Miranda* rights and then took a statement concerning the phone call. The substantive paragraph of the statement read "I swear that I did not recognize the voice on the phone and that I had no part of this crime and that I am willing to take a polygraph test if the police desire to have one". Defendant then left the station house. The following day, the defendant phoned the State Police to find out if Cleland wanted to see him. Being informed that Cleland did want to talk to him at greater length, the defendant went back to the police station. There, he was read his rights, which he waived, and then spoke freely about the anonymous call. Two New York State Police Investigators entered the investigation at this point, joining in the questioning. They then took the defendant to the Loudonville Headquarters of the New York State Police to administer a polygraph test, with the defendant's full consent. Defendant testified that the police told him that he would be taking the polygraph for the sole purpose of refreshing his recollection of the telephone call, hoping to aid the police in apprehending the criminal. He stated that he began to take the test, but when he realized that the scope of the test went beyond the original purpose, he demanded to see a lawyer. The officer administering the test allegedly refused; the defendant broke down and confessed. The People produced the police officers involved who testified that they took the defendant to headquarters for the polygraph examination to determine if he was telling the truth. The examiner claims that the test was never administered, that before it began he talked to the defendant about the duty to tell the truth and that the defendant broke down and confessed. Full *Miranda* warnings were given before the examination. After indictment, defendant moved to suppress the confession. The County Court held that defendant had not had any constitutional rights violated and that he had intelligently waived his rights. The confession was admitted and defendant subsequently

pleaded to reduced charges. Defendant's main contention is that the police deceived him by failing to inform him that he was a suspect in the crime and that he was taking the polygraph to determine if he had committed the crime. Having been thus deceived, any waiver of his rights was not knowing and voluntary and failure to provide a lawyer rendered the confession inadmissible. The State argues that the defendant was repeatedly apprised of his rights, he was aware of the investigation of the crime, he purposely tried to mislead the police, and he knowingly waived his rights. The circumstances in the present case clearly support a finding of voluntariness and evidence the defendant's knowledge that he was suspected of the crime's commission. The defendant was aware of the investigation of *this* crime and he voluntarily injected himself into it. He gave a statement, answered questions and agreed to a lie detector test, all without prodding and all under warning of his constitutional rights. It was only when actually confronted with the polygraph that he got scared and confessed. He intentionally tried to mislead the police and offered to bolster his story through the lie detector. He had to know that once his lie was tested and disproved, he would be under suspicion. Further, in his first statement to the police he stated that he was not involved in the crime and he consented to a polygraph examination. This demonstrates his knowledge of the police suspicion and what would be at issue when the lie detector test was given. On the facts of this case, the defendant was well aware of the situation he was in and the absence of an overt statement of defendant's status in the investigation is not crucial. The defendant also claims trickery and deception when the police suggested that he take the polygraph test only to jar his memory. The record does not clearly reflect trickery nor did the trial court find any, but in any case, trickery without more does not make a confession inadmissible *(People v Pereira,* 26 NY2d 265; *People v Boone,* 22 NY2d 476, cert den 393 US 991; *People v McQueen,* 18 NY2d 337; *People v Solari,* 43 AD2d 610, affd 35 NY2d 876). The deception must be accompanied by a threat or promise before a confession becomes involuntary. We have examined the remainder of defendant's contentions and find them to be without merit. Judgment affirmed. Koreman, P. J., Greenblott, Sweeney, Kane and Mahoney, JJ., concur.