STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT RAY WRIGHT, DEFENDANT-RESPONDENT.

Argued March 6, 1984—Decided July 20, 1984.

*Marilyn Goceliak Zdobinski*, Senior Assistant Prosecutor, argued the cause for appellant (*Joseph A. Falcone*, Passaic County Prosecutor, attorney; *Marilyn Goceliak Zdobinski* and *Gary H. Schlyen*, Senior Assistant Prosecutor, on the letter briefs).

*Norman J. Rosenblum*, Assistant Deputy Public Defender, argued the cause for respondent (*Joseph H. Rodriguez*, Public Defender, attorney; *Norman J. Rosenblum* and *Terence P. Corcoran*, Deputy Public Defender, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This case requires that we determine whether statements made by a defendant, subsequent to his request for counsel issued in the context of his refusal to submit to a polygraph

examination, were properly suppressed on the ground that they were obtained in violation of his fifth amendment right to have counsel present at an interrogation.

## I

Defendant, Robert Ray Wright, is charged with arson and murder, as a result of a fire he allegedly set on January 14, 1981, in which three children died. Defendant was taken into custody on February 6, 1981, at which time, upon being advised of his *Miranda* rights, he was questioned extensively about several fires. As found by the trial court, the defendant did "at no time during this period * * * either ask for a lawyer or ask that interrogation stop." Although he admitted setting fires at seven separate locations, defendant disclaimed knowledge of the fire of January 14, 1981.

On February 11, 1981, defendant agreed to take a polygraph examination. He was again advised of his *Miranda* rights and, as found by the trial court, "there was no request for a lawyer, nor a request [by defendant] to stop talking." The polygraph test resulted in a typed statement, wherein defendant denied any involvement with the fire.

Pursuant to an agreement reached on February 11, 1981, defendant returned to the prosecutor's office on February 12th to take another polygraph test. Once in the polygraph suite, however, defendant refused to submit to the examination. It was established at the hearing below that the investigator at the scene had related, in his handwritten notes, that defendant "refused to sign [a] waiver and wanted an attorney." The investigator testified that he could not recall this request for an attorney, but acknowledged that "if I wrote it down, that's the way it happened." However, he later recalled that defendant's request was more accurately "I won't sign any more deeds [or waivers] without a lawyer present."

Defendant was then brought back before several members of the prosecutor's staff, who had been advised only of his refusal to submit to the examination,[1] and who proceeded to inform defendant of discrepancies between his statement of February 6th and the polygraph test of February 11th. A sheriff's officer began questioning defendant about events that took place before and after some of the other fires defendant had admittedly set. Defendant was given his *Miranda* rights anew, and then told by one of the officers present that defendant was an "admitted arsonist." It was then directed that defendant be returned to jail. After being handcuffed, defendant was "[a]ppealed to a final time" by the assistant prosecutor, who recounted the pending arson charges. At this point, defendant cried and confessed to having set the fire of January 14, 1981.[2]

The trial court granted defendant's motion to suppress any written or oral statements made by him following his request for an attorney upon leaving the polygraph room.[3] The State filed an emergent application with the Appellate Division, seeking review of the trial court's suppression order. The Appellate Division declined to grant leave to appeal. The State then sought leave to appeal to this Court, seeking an order directing the Appellate Division to grant leave to appeal so as to permit arguments on the merits, or requesting that this Court grant leave to appeal and itself determine the merits of the suppression order. This Court granted the motion to determine the merits of the suppression order, and also allowed a stay of

---

[1]The trial court found that defendant's "request [for a lawyer] was not made known to [the assistant prosecutor] by any of his investigators. [Further, the assistant prosecutor] denied being told of defendant's request for an attorney or of his refusal to sign any deeds or waivers without an attorney present."

[2]Defendant maintained that he set the fire upon the instructions of one Remegio Cruz, a named co-defendant.

[3]These suppressed statements represent the only evidence that implicates defendant in the fire.

defendant's trial pending the outcome of this appeal. 94 *N.J.* 609 (1983).

## II

The issue presented is whether defendant's request for counsel, upon refusing to take the polygraph examination, was sufficient to invoke his fifth amendment rights as defined by *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), and *Edwards v. Arizona,* 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981), so as to preclude the admission into evidence of his confession, obtained as a result of further interrogation by the investigating officers without the presence of counsel. In *Miranda,* the Supreme Court declared:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease * * * until an attorney is present. [384 *U.S.* at 473-74, 86 *S.Ct.* at 1627, 16 *L.Ed.*2d at 723.]

In *Edwards,* the Court held that once a suspect invokes the right to counsel, he may not be subjected to further interrogation until counsel is provided, unless the suspect himself initiates dialogue with the authorities. 451 *U.S.* at 484, 101 *S.Ct.* at 1884, 68 *L.Ed.*2d at 386.

As an initial matter, we must consider whether defendant's statement, "I won't sign any more deeds [or waivers] without a lawyer present," should be construed as a request for counsel. We recently noted in *State v. McCloskey,* 90 *N.J.* 18, 26 n. 1 (1982), a case that also concerned the admissibility of evidence obtained from an accused during a police interrogation that followed the accused's request for counsel, that because the right to counsel is so fundamental, an equivocal request for an attorney is to be interpreted in the light most favorable to defendant. Our position in that case was reinforced by the weight of authority, which liberally construes ambiguous requests. *See, e.g., Maglio v. Jago,* 580 *F.*2d 202, 205 (6th Cir.1978) ("Maybe I should have an attorney" interpreted as a request for counsel); *United States v. Clark,* 499 *F.*2d 802, 805

(4th Cir.1974) ("I had better talk to a lawyer" is a request for an attorney).[4]

Applying this standard, we find that defendant's statement was sufficient to invoke the right to counsel. At the very least, and as found by the trial court, the interrogating agent was under an obligation to clarify the meaning of defendant's remark before proceeding with further questioning. *See State v. Fussell,* 174 *N.J.Super.* 14, 21 (App.Div.1980); discussion, *supra* at 120 n. 4.

The State maintains, nonetheless, that any such request for counsel was made in the limited context of defendant's refusal to take a polygraph examination, and therefore does not trigger the same constitutional safeguards that would preclude further interrogation. The State points to language in both *Miranda* and *Edwards* to emphasize its contention that further questioning is precluded only when the accused invokes his right to have counsel present "during custodial interrogation," *Edwards, supra,* 451 *U.S.* at 484, 101 *S.Ct.* at 1884, 68 *L.Ed.*2d at 386, or "before speaking to police," *Miranda, supra,* 384 *U.S.* at 474, 86 *S.Ct.* at 1628, 16 *L.Ed.*2d at 723.

---

[4] *See also United States v. Riggs,* 537 *F.*2d 1219 (4th Cir.1976). In *Riggs,* the defendant contended that his statement, "I have no information to furnish the FBI with regard to his money," was sufficient to trigger his *Miranda* rights to remain silent and cause the interrogation to cease. Both the magistrate and trial court interpreted the statement as a "mere declaration of ignorance not precluding further cooperation with the investigation." *Id.* at 1222. The appeals court adopted the trial court's interpretation, regarding it as a finding of fact that was not clearly erroneous. *Id.* Nevertheless, the *Riggs* court recommended the following procedure, which the Appellate Division adopted as law in *State v. Fussell,* 174 *N.J.Super.* 14, 21 (1980):

[W]here a suspect makes a statement which arguably amounts to an assertion of his *Miranda* rights and the interrogating agent recognizes that the statement is susceptible of that construction, his questioning with regard to the crime he is investigating should immediately cease and he should then inquire of the suspect as to the correct interpretation of the statement. Only if the suspect makes clear that he is not invoking his *Miranda* rights should substantive questioning be resumed.

 We find little merit in the State's suggestion that questioning that takes place before, during, or after a lie-detector test is somehow materially different from "custodial interrogation." As set forth by the Supreme Court in *Miranda,* "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 *U.S.* at 444, 86 *S.Ct.* at 1612, 16 *L.Ed.*2d at 706. "Interrogation," as subsequently defined, includes "not only * * * express questioning, but also any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 *U.S.* 291, 301, 100 *S.Ct.* 1682, 1689, 64 *L.Ed.*2d 297, 308 (1980). Certainly the context in which defendant found himself amounted to custodial interrogation, requiring that adequate protective devices be employed to dispel the compulsion inherent in such surroundings. Moreover, the same concerns for self-incrimination that attend a routine custodial-questioning session are present during a lie-detector test, in which anything the defendant says can be used against him. Essentially, there is no qualitative difference, in terms of potential harm or constitutional rights implicated, between questioning in either context. This conclusion is underscored by precedent of the Supreme Court, which has accepted the premise that a polygraph test is the equivalent of interrogation. In *Wyrick v. Fields,* 459 *U.S.* 42, 103 *S.Ct.* 394, 74 *L.Ed.*2d 214 (1983), defendant, upon consulting with his attorney, asked to take a polygraph examination. The Supreme Court found that "[b]y requesting a polygraph examination, [defendant] initiated interrogation." 459 *U.S.* at 47, 103 *S.Ct.* at 396, 74 *L.Ed.*2d at 218.

 Finally, the State urges that any right to counsel that attaches in this context would apply only to statements that might have been made during the actual administration of the polygraph test. This narrow view contravenes substantial precedent and sound policy considerations. In cases in which

defendants have confessed in anticipation of, during, or following a polygraph examination, courts have generally employed a strict *Miranda*-type analysis to assess the validity of the confession: Were the appropriate warnings given, and did the defendant knowingly and intelligently waive them? When defendants are not advised of their *Miranda* rights, or do not properly waive them, confessions elicited *after* a polygraph test are typically suppressed. *See, e.g., State v. Edwards,* 111 *Ariz.* 357, 529 *P.*2d 1174 (1974); *Colorado v. Algien,* 180 *Colo.* 1, 501 *P.*2d 468 (1972); *State v. Faller,* 88 *S.D.* 685, 227 *N.W.*2d 433 (1975). By the same token, a proper recitation of rights, followed by a valid waiver, renders a confession admissible. *See, e.g., State v. Melvin,* 65 *N.J.* 1 (1974) (content of *Miranda* -type warnings given to defendant prior to polygraph examination sufficiently advised him of his constitutional rights to render confession made following the examination admissible); *People v. McGuffin,* 55 *A.D.*2d 772, 389 *N.Y.S.*2d 478 (1976); *Turner v. State,* 76 *Wis.*2d 1, 250 *N.W.*2d 706 (1977). *See generally* Annot., 89 *A.L.R.*3d 230 (1979).

## III

The State's additional argument that the subsequent questioning by the prosecutor was proper because it was pursuant to defendant's knowing and intelligent waiver of his right to counsel misconceives the mandate of *Edwards, supra,* 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378. *Edwards* established a *per se* rule that "bars the reinterrogation of all criminal suspects who have invoked the right to counsel unless they initiate further conversation," communications, or exchanges with the authorities. *McCloskey, supra,* 90 *N.J.* at 28. An accused who has expressed his desire to deal with the police only through his counsel is not subject to further interrogation until counsel has been made available, unless the accused himself initiates further communication. *Edwards, supra,* 451 *U.S.* at 484, 101 *S.Ct.* at 1884, 68 *L.Ed.*2d at 386. Thus, in the instant case, in order to show a waiver, the State must demon-

strate that the accused actually initiated the subsequent questioning. "Waiver will not be implied [simply] from the fact that the defendant incriminated himself after *Miranda* warnings were given." *McCloskey, supra,* 90 *N.J.* at 28.

The Supreme Court has held that even after initially being advised of his *Miranda* rights, an accused may himself validly waive his rights and respond to interrogation. *See North Carolina v. Butler,* 441 *U.S.* 369, 99 *S.Ct.* 1755, 60 *L.Ed.*2d 286 (1979). However, as noted, the Supreme Court has insisted that additional safeguards are necessary when a defendant asks for counsel.

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. We further hold that *an accused, such as [the defendant], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.* [*Edwards, supra,* 451 *U.S.* at 484–85, 101 *S.Ct.* at 1884–85, 68 *L.Ed.*2d at 386 (footnote omitted, emphasis added).]

This prophylactic requirement was recently restated in *Wyrick v. Fields, supra,* 459 *U.S.* at 46, 103 *S.Ct.* at 395, 74 *L.Ed.*2d at 217, in which the Court held that before a suspect who has requested an attorney can be subjected to further interrogation there must be a showing that the "suspect himself initiated dialogue with the authorities."

■ Further, even if a conversation with the authorities is initiated by the accused subsequent to his request for counsel, the burden remains on the prosecution to demonstrate that there was, under the totality of the circumstances, a knowing and intelligent waiver of the fifth amendment right to have counsel present during the interrogation. *Edwards, supra,* 451 *U.S.* at 486 n. 9, 101 *S.Ct.* at 1885 n. 9, 68 *L.Ed.*2d at 387 n. 9.

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, *whether the purported waiver was*

*knowing and intelligent and found to be so under the totality of the circumstances,* including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. [*Id.* (emphasis added).]

The Supreme Court recently reaffirmed these principles in *Oregon v. Bradshaw,* 462 *U.S.* 1039, 103 *S.Ct.* 2830, 77 *L.Ed.*2d 405 (1983). There defendant was brought to police headquarters for questioning in connection with the investigation of the death of a person whose body had been found in his wrecked pickup truck. Defendant was advised of his *Miranda* rights, and shortly thereafter, a police officer informed defendant of the officer's theory of how the accident occurred; a theory that placed defendant behind the wheel of the vehicle. Defendant denied any involvement, and said, "I do want an attorney before it goes very much further." The officer then ended the conversation. Sometime later, either just before or during defendant's transfer to a county jail, he asked a police officer, "Well, what is going to happen to me now?" The officer advised defendant that he was under no obligation to speak, and reminded defendant of his request for an attorney. Defendant said he understood, and a conversation ensued, concerning where defendant was being taken and the offense with which he would be charged. The officer suggested that defendant might help himself by taking a polygraph examination. Pursuant to this suggestion, the next day, following another reading to defendant of his *Miranda* rights and defendant's signing a written waiver of those rights, the polygraph test was administered. At its conclusion, the examiner told defendant that he did not believe defendant was telling the truth. Defendant then recanted his story, admitting that he had been drunk and at the wheel of the vehicle when the accident occurred.

Justice Rehnquist, writing for a plurality of the Court, found that defendant's question ("Well, what is going to happen to me now?") "initiated" further conversation—it "evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the

incidents of the custodial relationship." 462 *U.S.* at ——, 103 *S.Ct.* at 2835, 77 *L.Ed.*2d at 412. Second, upon an examination of the particular facts and circumstances surrounding the case, the Court embraced the findings of the trial court that defendant's statements "were voluntary and the result of a knowing waiver of his right to remain silent." *Id.*

Applying this analysis to the facts now before us, we find no evidence to suggest that defendant re-initiated the questioning that ultimately led to his confession. As found by the trial court, the accused himself did not re-open the dialogue about the subject matter of the investigation. When defendant appeared for further questioning upon his refusal to submit to the polygraph test, the prosecutor outlined the discrepancies between defendant's accounts. A sheriff's officer then proceeded to question defendant. The prosecutor, upon directing that defendant be returned to jail, again described the pending arson charge. Defendant's capitulation and confession followed.

The State has not met its burden, under *Edwards,* of demonstrating that defendant waived his fifth amendment rights after invoking the right to counsel.[5] To establish a

---

[5]We note that the Supreme Court recently concluded that *Edwards,* while it "did not overrule any prior decision or transform standard practice," did establish a new rule, insofar as it announced a new test for when waiver would be acceptable once a suspect has invoked his right to counsel. *Solem v. Stumes,* —— *U.S.* ——, 104 *S.Ct.* 1338, 79 *L.Ed.*2d 579 (1984). Accordingly, the Court determined that *Edwards* should not be applied retroactively. However, the Court hastened to add that "just where the line [of nonretroactivity] should be drawn need not be decided today." *Id.* The Court noted only that "at a minimum, nonretroactivity means that a decision is not to be applied in collateral review of final convictions." *Id.*

Prior to this recent pronouncement, we had concluded that *Edwards* applied "to all trials which began after the decision was announced." *State v. McCloskey,* 90 *N.J.* 18, 28 (1982). At the very least, this finding is safely within the one guideline suggested by the Supreme Court. The line that we drew in *McCloskey* was the same line employed by the Supreme Court when it announced its rule in *Miranda,* a rule that, by the Court's own characterization, was unlike

waiver, it would be a "necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards, supra*, 451 *U.S.* at 486 n. 9, 101 *S.Ct.* at 1885 n. 9, 68 *L.Ed.*2d at 387 n. 9. Defendant did not "initiate" further communication with the investigators—he made no inquiry or overture that would demonstrate a desire to discuss the pending charge. Rather, the interrogation was conducted at the insistence of the authorities.

## IV

In conclusion, we find that defendant's request for an attorney, although somewhat ambiguous, sufficiently constituted an invocation of his fifth amendment rights. That defendant's request for counsel occurred in the context of his refusal to submit to a polygraph examination does not alter or diminish the scope of the constitutional protection. The setting in which defendant found himself was rife with the compulsion inherent in custodial surroundings. Accordingly, absent a valid waiver, all interrogation should have ceased until defendant was afforded access to counsel. Finally, the facts do not even remotely suggest that a waiver took place. Defendant did not initiate the critical dialogue with the authorities; simply stated, he did not invite further interrogation. Accordingly, we find that

---

*Edwards,* as it represented a "clear break with the past" and presumably would be entitled to more limited retroactive effect than would its successor.

The trial of the instant matter began in September 1981, four months after the decision in *Edwards* was announced. The *Miranda* hearing that led to the suppression of defendant's confession did not commence until October 1982. Thus, it seems reasonably certain that *Edwards* is applicable to this case. We hasten to add, however, that even without applying *Edwards' per se* rule that a suspect would have to initiate subsequent communication to render valid any waiver of his constitutional rights, the State has not met its burden of demonstrating, in accord with pre-existing precedent, that this defendant knowingly, voluntarily, and intelligently waived his right to counsel. *See Johnson v. Zerbst,* 304 *U.S.* 458, 464, 58 *S.Ct.* 1019, 1023, 82 *L.Ed.* 1461, 1466 (1938); *Miranda, supra,* 348 *U.S.* at 475, 86 *S.Ct.* at 1628, 16 *L.Ed.* 2d at 723 (waiver question is controlled by *Johnson v. Zerbst* ).

defendant's confession was properly suppressed. To hold otherwise on the record before us would undermine the safeguards that *"Miranda* and *Edwards* carefully erected around the right to counsel in the custodial setting." *Oregon v. Bradshaw, supra,* 462 *U.S.* at ——, at ——, 103 *S.Ct.* at 2839, 77 *L.Ed.*2d at 418 (Marshall, J., dissenting).

The judgment below is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal* —None.