**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2207-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EVENS DUMAS, a/k/a
EVENA DUMAS,

    Defendant-Appellant.

_____

Submitted April 20, 2020 – Decided June 24, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-04-0466.

Joseph E. Krakora, Public Defender, attorney for appellant (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Evens Dumas pleaded guilty to first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count eleven),[1] admitting he brought a handgun to a planned robbery of players at a card game, and shot and killed one of the players "during the process of trying to take the money." Defendant specifically reserved his right to appeal the denial of his motion to suppress the statement he made to Bergen County Prosecutor's Office detectives. On appeal he argues:

> [POINT ONE]
>
> [DEFENDANT'S] PURPORTED WAIVER OF HIS MIRANDA RIGHTS, AND HIS SUBSEQUENT CUSTODIAL STATEMENTS, WERE NOT KNOWINGLY AND VOLUNTARILY GIVEN, AND THEREFORE SHOULD NOT HAVE BEEN ADMITTED AT TRIAL.

---

[1] Defendant, along with his three co-defendants, were indicted for second-degree conspiracy to commit armed burglary, N.J.S.A. 2C:18-2(b)(2) and N.J.S.A. 2C:5-2 (count one); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2 (count two); second-degree burglary, N.J.S.A. 2C:18-2 and N.J.S.A. 2C:2-6 (count three); first-degree robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:2-6 (counts four, five, six, seven, eight, nine and ten); first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) and N.J.S.A. 2C:2-6 (count eleven); first-degree felony murder (burglary), N.J.S.A. 2C:11-3(a)(3) and N.J.S.A. 2C:2-6 (count twelve); first-degree felony murder (robbery), N.J.S.A. 2C:11-3(a)(3) and N.J.S.A. 2C:2-6 (count thirteen); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) and N.J.S.A. 2C:2-6 (counts fourteen, fifteen, sixteen and seventeen); second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:2-6 (counts eighteen, nineteen, twenty and twenty-one), and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b) and N.J.S.A. 2C:2-6 (count twenty-two).

We reject defendant's present arguments—some made for the first time on appeal—and affirm substantially for the same reasons set forth by the motion judge in his written decision based on his findings made after an evidentiary hearing during which he heard testimony from one of the detectives who interviewed defendant and watched and listened to the video recording of defendant's statement.

We defer to those factual findings "unless they were 'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). That deferential standard is extended to "factual findings based on a video recording or documentary evidence" to ensure that New Jersey's trial courts remain "'the finder of the facts[.]'" State v. S.S., 229 N.J. 360, 381 (2017) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment). We recognize that "[p]ermitting appellate courts to substitute their factual findings for equally plausible trial court findings is likely to 'undermine the legitimacy of the [trial] courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.'" Id. at 380-81 (second alteration in original) (quoting Fed. R. Civ. P. 52(a) advisory

3

committee's note to 1985 amendment). Nevertheless, the motion judge's application of his factual findings to the law is subject to plenary review. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

In his merits brief, defendant argues:

> the police steadfastly pressured the young [defendant] into signing a waiver and making an incriminating statement. While apparently he was fed, he was questioned intensely for four consecutive hours, then left in the interrogation room after eating a meal for another (unrecorded) three hours, and then interrogated for another hour without rereading his Miranda[2] rights.

Defendant did not argue to the motion judge that he was pressured to sign the Miranda waiver form. We, therefore, need not address that argument. State v. Robinson, 200 N.J. 1, 19 (2009) ("[T]he points . . . developed in proceedings before a trial court define the metes and bounds of appellate review."); see also State v. Macon, 57 N.J. 325, 337-38 (1971) (an appellate court "may decline to accept [arguments] first raised on appeal," or alternatively, review those arguments for plain error).

Moreover, defendant does not develop this unsupported argument in his brief beyond that brief mention, thereby waiving that issue. N.J. Dep't of Envtl.

---

[2]  Miranda v. Arizona, 384 U.S. 436, 477 (1966).

<u>Prot. v. Alloway Twp.</u>, 438 N.J. Super. 501, 506 n.2 (App. Div. 2015) (finding that an issue raised in "a single sentence in [defendant's] brief" was waived because defendant provided no supporting legal argument). And, nothing in the record supports that defendant was pressured to sign the forms. Prior to reading the forms to defendant, the detective merely confirmed he was obtaining the water defendant requested and asked pedigree information. As such, there is no merit in defendant's truncated argument.

Nor do we see that defendant raised the additional argument to the motion judge that police did not stop questioning and inquire if defendant invoked his right to remain silent when he told the detectives he "had nothing to say." Although we need not consider this argument that the motion judge did not have an opportunity to consider, <u>Robinson</u>, 200 N.J. at 19-20, we nonetheless determine defendant's skewed interpretation of the actual words he used is meritless.

As the judge found, the detective who testified at the suppression hearing did most of the talking during the early part of the interview. Defendant repeatedly denied any knowledge of the shooting before the colloquy quoted by defendant in support of his present argument:

> [DETECTIVE]: Come on, what you want to say?

[DEFENDANT]: There ain't nothing to say.

[DETECTIVE]: <u>Cuz you don't want to say anything</u>?

[DEFENDANT]: <u>It's not cuz I don't want to say anything</u>, there ain't nothing to say. I got nothing to say.

[(Emphasis added).]

If defendant made "a request, 'however ambiguous,' to terminate questioning[, remain silent] or to have counsel present[, the request] must be diligently honored." State v. Hartley, 103 N.J. 252, 263 (1986) (quoting State v. Kennedy, 97 N.J. 278, 288 (1984)). "[A]ny words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation" of the right to remain silent and a desire to cease questioning. S.S., 229 N.J. at 382, 384 (quoting State v. Bey, 112 N.J. 123, 136 (1988)) (defendant invoked his right after stating: "No, that's all I got to say. That's it"); State v. Johnson, 120 N.J. 263, 281 (1990) ("a suspect who ha[d] 'nothing else to say' . . . asserted [his] right to remain silent" (citations omitted) (quoting Christopher v. Florida, 824 F.2d 836, 842 (11th Cir. 1987))).

"If, however, 'following an equivocal indication of the desire to remain silent,' the police are reasonably unsure whether the [defendant] was asserting that right, they 'may ask questions designed to clarify whether the [defendant]

intended to invoke his right to remain silent.'" Johnson, 120 N.J. at 283 (quoting Christopher, 824 F.2d at 841-42). The police are entitled to resume questioning if, in response to clarifying questions, the defendant indicates he is not invoking his right; in which case, any confession obtained thereafter is admissible. See ibid. ("[I]f the suspect makes clear that he is not invoking his Miranda rights . . . substantive questioning [may] be resumed." (quoting State v. Wright, 97 N.J. 113, 120 n.4 (1984))).

In context, it is obvious defendant was not invoking his right to remain silent or seeking to terminate the interrogation, but rather, was continuing to deny any involvement in the crimes. See State v. Diaz-Bridges, 208 N.J. 544, 575 (2011) (Albin, J., dissenting) (noting that when determining whether a defendant invoked his right to remain silent, "[t]he words used by a suspect are not to be viewed in a vacuum, but rather in 'the full context in which they were spoken.'" (quoting State v. Roman, 382 N.J. Super. 44, 64 (App. Div. 2005))). Defendant's remark that he had "nothing to say" was another denial of guilt. Although defendant's remark did not amount to even an equivocal invocation, the detective immediately asked for clarification. Defendant's response demonstrated that he was not attempting to end the conversation, but rather, was denying any involvement in the crimes. The detectives were entitled to continue

questioning. As such, the subsequent confession was not obtained by virtue of a <u>Miranda</u> violation. <u>See</u> <u>Johnson</u>, 120 N.J. at 283.

We also see no mention to the motion judge of defendant's present argument that the detectives' questioning was akin to the Reid method of interrogation which produces false confessions, especially in juvenile offenders. The detective was not questioned about the method during the evidentiary hearing. Defendant contends the detectives "refused to listen to [his] protestations of innocence, promised [him] leniency if he was truthful . . ., blamed the poker-players even as the crime was minimized, expressed false sympathy" and overbore his will in order to force a confession is meritless. Again, although not required, <u>Robinson</u>, 200 N.J. at 19-20, we will address the issue.

The Reid method of interrogation has been described by its critics as a "nine-step sequence of social influence and techniques of persuasion [designed] to systematically weaken suspects' resistance and to provide face-saving rationales." <u>State ex rel. A.W.</u>, 212 N.J. 114, 125 n.3 (2012) (alteration in original) (quoting Barry C. Feld, <u>Criminology: Police Interrogation of Juveniles: An Empirical Study of Policy and Practice</u>, 97 <u>J. Crim. L. & Criminology</u> 219, 236-37 (2006)). "[T]hese techniques include 'developing "techniques of

neutralization" or psychological themes to justify or excuse the crime,' 'interrupting the suspect's attempts at denial,' and 'showing sympathy and urging the suspect to tell the truth.'" Ibid. (quoting Feld, 97 J. Crim. L. & Criminology at 236-37).

We note none of the Reid techniques complained of have been found to be unduly coercive even when applied to juvenile suspects, which defendant—twenty years-old[3] on May 6, 2014, the date of the interview—was not. See id. at 137-38 (declining to ban the use of the Reid method of interrogation on juvenile's offenders, and finding that even though the technique was used, the juvenile defendant's confession was knowingly, intelligently and voluntarily made and was not the result of an overborne will); see also State v. Reyes, 237 N.J. Super. 250, 258-60 (App. Div. 1989) (finding police did not overbear defendant's will by expressing sympathy and discussing forgiveness during the interrogation), overruled on other grounds, State v. A.O., 397 N.J. Super. 8, 10 (App. Div. 2007).

Contrary to defendant's suggestion, the detectives did not make any promises of leniency; rather, they suggested that members "up the chain" of the

---

[3] The presentence report lists defendant's date of birth in March 1994.

criminal justice system liked to see cooperation.  As the detective explained to defendant:

> We don't stop after I talk to you. Or the investigation doesn't stop.  It moves forward.  And it goes in front of . . . our bosses, it goes in front of the prosecutor, eventually it goes in front of a judge.  So the case moves forward and we tell a story.  And we tell a story based on the facts of the case, based on what we observed, based on people we talk to, based on a million different things. We put the case together and we tell a story.  And a story has many, many different parts.  And the stories gonna be told.  Whether you sit here and talk to me or don't talk to me, the stories gonna be told.  But I'm telling you, with a hundred percent certainty that it's a better story and it's a better story for you and its helpful to you because it's all about cooperation, especially in Bergen County, if you tell your part of the story. Anything, I went up there, I didn't know what I was doing, I didn't know where we're going, things went bad, whatever. Whatever story you want to tell me but it's a small little piece and it helps me explain it to my boss, that's who I'm going to have to talk to after I leave here, and to their bosses and so on and so forth. It helps them get an explanation on how things went bad and . . . how things happened. Okay, because the story gets told regardless.

The mere fact that the detective suggested that the story would "sound better" if defendant gave his version of events was not the same as promising him that he would receive leniency if he made a confession, see State v. Watford, 261 N.J. Super. 151, 163 (App. Div. 1992) (Haley, J., concurring) ("agent's statement to defendant that it was in his best interest to cooperate was not a

'promise'" (quoting Rachlin v. United States, 723 F.2d 1373, 1377-78 (8th Cir. 1983))), nor was such a suggestion "so manipulative or coercive [as to deprive defendant] of his ability to make an unconstrained, autonomous decision to confess," State v. Di Frisco, 118 N.J. 253, 257 (1990) (quoting Miller v. Fenton, 796 F.2d 598, 605 (3d. Cir. 1986)).

Moreover, defendant did not admit to anything during the initial part of the interview. That part commenced at 2:08 p.m. and lasted for two hours and forty-four minutes, after which defendant was transported by the detectives to the Bergen County Sheriff's Department of Criminal Investigation (BCI) for processing and to take buccal swab samples from defendant pursuant to a court order. They left BCI for the return trip at about 7:30 p.m., stopped for food, and arrived at the Prosecutor's Office at about 8:00 p.m., and ate dinner together. The detectives then left defendant in the interview room while they met with supervisors and watched the co-defendant's interview.

The judge credited the detective's testimony that defendant knocked around midnight and indicated he wanted to talk about the incident. During the next hour, defendant admitted his involvement in the murder. We agree with the judge's assessment that "[i]t is apparent that sitting in the interview room

11

alone for more than three hours caused [defendant] to reflect and decide to make the admissions, which are video-recorded, commencing at 12:03 [a.m.]."

Thus, despite the argument that the detectives' methods elicited a false confession from the youthful defendant, he did not implicate himself during the initial questioning from 2:08 p.m. until 4:52 p.m. Defendant initiated the second part of the interview and admitted to the murder. We note at the commencement of the second part of the interview, the detective and defendant discussed the Miranda warnings the detective read earlier:

> [DETECTIVE]: Alright, [defendant], we're going back on the record. Okay, uh, earlier today when I spoke with you, I read you your Miranda [r]ights, okay. You understand that your . . . Miranda [r]ights are still in effect and that you can . . . at any time stop talking to us, okay. And initiate your right to stop talking. You know that your Miranda [r]ights are still in effect, correct?
>
> [DEFENDANT]: Yeah.
>
> [DETECTIVE]: Okay, and you know you can stop talking to us at any time or – and request an attorney at any time. You understand that, right?
>
> [DEFENDANT]: Correct.

Defendant does not argue the detective was required to re-administer full Miranda warnings. See State v. Milledge, 386 N.J. Super. 233, 245 (App. Div. 2006) (holding a "re-acknowledgement without a complete re-read of

defendant's <u>Miranda</u> rights" sufficed where defendant did not assert the right to remain silent).

We do not discern any merit to defendant's argument that he was not tested for drugs before the interview despite advising the detectives he was shot on March 23 and still had a stitch that had to be removed; defendant was never asked if he was taking any controlled dangerous substances. Despite defendant's claim he was taking Percocet for pain relief, defendant's engagement with the detectives does not reveal any level of intoxication or influence from any substance. Defendant was able to fully and coherently answer each question posed to him. The detective testified that, based on his twenty-one years in law enforcement, defendant's appearance, speech, eyes and demeanor suggested that he was not under the influence of any drugs during the questioning. Even if defendant was under the influence at the time of the questioning, "[a] confession made by a person while under the influence of drugs is not per se involuntary." <u>State v. Wade</u>, 40 N.J. 27, 35 (1963). As we held in <u>State v. Warmbrun</u>, 277 N.J. Super. 51, 64 (App. Div. 1994), where the defendant was "capable of communicating[,] . . . was responsive in answering questions[,] and could answer correctly questions such as his name, age, etc.[,]" his statement was

properly admitted.  Moreover, defendant twice said he understood his <u>Miranda</u> rights.

The question of voluntariness requires "the trial court [to] review[] 'the totality of the circumstances surrounding the custodial interrogation,'" <u>State v. Tillery</u>, 238 N.J. 293, 316 (2019) (quoting <u>State v. A.M.</u>, 237 N.J. 384, 398 (2019)), and decide whether defendant's decision to waive his rights resulted from an impermissibly overborne will, <u>State v. Burris</u>, 145 N.J. 509, 536 (1996). Our Supreme Court has held:

> Every case must turn on its particular facts. In determining the issue of voluntariness . . . a court should assess the . . . characteristics of the suspect and the details of the interrogation.  Some of the relevant factors include the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.  A suspect's previous encounters with the law has been mentioned as an additional relevant factor.
>
> [<u>State v. Miller</u>, 76 N.J. 392, 402 (1978) (citation omitted).]

The motion judge found "no evidence . . . that [defendant] was 'threatened, tricked or cajoled' into a waiver of his rights or that his will was overborne." The judge concluded the detective's "technique, attempting to gain [defendant's] trust and urging him to cooperate with law enforcement, was well within

acceptable bounds of interrogation and was not 'so manipulative or coercive [to deprive defendant] of his ability to make an unconstrained, autonomous decision to confess . . . .'" (Second alteration in original) (citations omitted). The judge found the detective's "tone of voice and frustration did not rise to the level of physical or psychological threats to render the confession involuntary." The judge also determined the detective's persistence that defendant was untruthful was not overbearing. See State v. Cabrera, 387 N.J. Super. 81, 103 (App. Div. 2006).

We see no reason to disagree with the judge's supported conclusions. Defendant was a twenty-year-old man at the time of the interrogation with an eleventh-grade education. He had a substantial criminal history and was familiar with the criminal justice system: as a juvenile he was charged with robbery, N.J.S.A. 2C:15-1(a)(3), possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a), and conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(3); as an adult, he was charged with possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a), possession of a controlled dangerous substance with intent to distribute, N.J.S.A 2C:35-5(a)(1), possession of a controlled dangerous substance with intent to distribute on or near school

property, N.J.S.A. 2C:35-7, unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and numerous municipal offenses.

At the outset of the interrogation, defendant was read his rights and indicated that he understood them, that "[n]o promises or threats have been made" to him, and that he should not feel pressured to continue the interrogation if he did not want to. He repeated that he understood those rights at the beginning of the second part of the interview.

Defendant did not endure an unreasonably lengthy period of questioning, mental or physical exhaustion, or threats of violence. As the motion judge pointed out, defendant "was questioned for less than four hours, notwithstanding being in custody for a twelve[-]hour period." The interview occurred during the middle of the day: it "began at 2:08[p.m.] and continued until 4:52[p.m.]" There were breaks in the questioning. Defendant was fed dinner at a reasonable hour and was not forced to eat alone. Nothing in the record suggests he was denied a break or a request for food or water; or otherwise complained that he was too tired to continue the questioning.

Inasmuch as the State proved beyond a reasonable doubt that defendant knowingly, intelligently, and voluntarily waived his Miranda rights, See State v. Hreha, 217 N.J. 368, 383 (2014); State v. Nyhammer, 197 N.J. 383, 400-01

16

(2009), and defendant's statement was voluntary and not the product of an overborne will, State v. Galloway, 133 N.J. 631, 654 (1993), defendant's suppression motion was properly denied. We discern no error, much less plain error, in the motion judge's decision. R. 2:10-2; Macon, 57 N.J. at 337-38.

To the extent not addressed, defendant's remaining arguments are without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION