**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2359-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDREW M. BRIGHT-BAILEY,
a/k/a ANDREW BRIGHT and
ANDREW BAILEY,

     Defendant-Appellant.

_____

Submitted April 12, 2021 – Decided May 3, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-09-2196.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his conviction for second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1).[1] He primarily challenges an order denying his motion to suppress his statements to police. The judge determined that defendant knowingly, intelligently, and voluntarily waived his Miranda[2] rights based on the totality of the circumstances, including his age, prior criminal history, conduct and demeanor during the interrogation. We affirm.

Defendant and his girlfriend co-defendant attempted to rob a man in Cherry Hill Township by threatening him with a knife. The next day, Philadelphia police pulled over defendant in a vehicle, which they later discovered was stolen. Defendant fled on foot, but police eventually captured him. Cherry Hill Detectives Sorrentino, Daniello, and Weist traveled to

---

[1] A Camden County Grand Jury returned Indictment Number 19-09-02196, charging defendant with eight counts: first-degree carjacking, N.J.S.A. 2C:15-2(a)(2); second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2; second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1(a)(2); first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2); third-degree theft of an automobile, N.J.S.A. 2C:20-3(a); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree possession of a weapon, N.J.S.A. 2C:39-5(d).

[2] Miranda v. Arizona, 384 U.S. 463 (1966).

A-2359-19

Philadelphia later that day to interview defendant but did so after Philadelphia police spoke to him.

A Philadelphia detective spoke to defendant first, advised him of his rights, and asked him to read a card used by Philadelphia Police Officers (Philadelphia Card) which set forth his rights. The front of the Philadelphia Card states that the detectives "have a duty to explain to [defendant] and to warn [defendant] that [he] ha[s] the following legal rights," including:

> A. You have the right to remain silent and do not have to say anything at all.
>
> B. Anything you say can and will be used against you in court.
>
> C. You have a right to talk to a lawyer of your choice before we ask you any questions, and also to have a lawyer here with you while we ask questions.
>
> D. If you cannot afford to hire a lawyer, and you want one, we will see that you have one provided to you free of charge before we ask you any questions.
>
> E. If you are willing to give us a statement, you have a right to stop at any time you wish.

On the back of the card, it lists "questions to be answered by accused," including:

> 1. Do you understand that you have the right to keep quiet and do not have to say anything at all?
>
> 2. Do you understand that anything you say can and will be used against you?

3

3. Do you want to remain silent?

4. Do you understand that you have a right to talk with a lawyer before we ask you any questions?

5. Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?

6. Do you want either to talk to a lawyer at this time, or to have a lawyer with you while we ask you questions?

7. Are you willing to answer questions of your own free will, without force or fear, and without any threats or promises having been made to you?

Defendant read both sides of the Philadelphia Card and signed the back of the form.[3] The Philadelphia detective confirmed that defendant was able to read and understand the card and reiterated that the detectives were going to discuss the carjacking charge with him.

Shortly after, the three Cherry Hill detectives entered the room. They interrogated defendant for "around [forty-five] minutes" while he was handcuffed and not free to leave. Detective Daniello began the interview by advising defendant of his Miranda rights. He read the Cherry Hill Notification

---

[3] The State noted that "a copy of the front of defendant's [Philadelphia card] is unavailable," but that police provided both he and his co-defendant the same card, and the judge reviewed both sides of the card during the hearing.

4

of Rights form (Cherry Hill Form) to defendant. The Camden County Police Department prepared a transcript of the questioning:

> [DET. DANIELLO]: I have to advise you. You have the right to remain silent. . . . [Y]ou have the right to have legal coun[sel] with you before you say or do anything. Anything that you[] do or say can be held against you, if you don't have proper funds to hire an attorney one will be appointed on your behalf, and you have the continuing opportunity to exercise those rights at any time. Do you understand that?
>
> [DEFENDANT]: Yes sir.
>
> [DET. DANIELLO]: Okay. Um, are you willing to speak with us right now?
>
> [DEFENDANT]: Yes sir. Of course.
>
> [DET. DANIELLO]: Without having an attorney? Okay. Do me a favor. Left[-]handed?
>
> [DEFENDANT]: Yes sir.

When Detective Daniello asked defendant if he would like to speak with the detectives, defendant said "[y]es sir. Of course" before Detective Daniello could finish his question "without having an attorney?" After Detective Daniello finished his question, defendant did not say anything before the detective moved on. Defendant did not say he wished to have an attorney present. Detective Daniello marked the Cherry Hill Form according to defendant's responses, checking "yes" to the questions "[d]o you understand your rights, as I have

A-2359-19

explained them?" and "[a]re you willing to talk with officers without consulting a lawyer, or having a lawyer present with you?" He then presented the Cherry Hill Form to defendant, who acknowledged and signed it. Defendant made no further attempts to invoke his rights during the interrogation. Defendant then admitted to the detectives that he and his girlfriend conspired to rob a man in Cherry Hill by threatening him with a knife.

Defendant filed his motion to suppress his statement. The judge conducted a hearing and took testimony from Detective Daniello. After denying the motion, the judge summarized his findings of fact on the record:

> I think that the warnings were sufficient under our case law and our Constitution. I think it's clear that the defendant's testimony or statement . . . was relaxed, he was comfortable. His tone of voice . . . was consistent with his demeanor. There was no undue force, no pressure. . . . This was a smart defendant who clearly understands what was happening, clearly understood the questions, and I do find that his rights were sufficient that were read to him and that he has voluntarily and knowingly waived those rights. As such, I will not suppress his statement.

Defendant then pleaded guilty to second-degree conspiracy to commit robbery and preserved his right to appeal the denial of his motion to suppress his statement. Defendant received a five-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

A-2359-19

On appeal, defendant argues:

> THE [TRIAL JUDGE] ERRED BY HOLDING THAT THE [DEFENDANT'S] RECORDED STATEMENT WAS ADMISSIBLE. U.S. CONST., AMENDS. V, XIV[.]

In reviewing a trial judge's determination regarding whether to admit or suppress a defendant's statement, we defer to the judge's factual findings so long as they "are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015); see State v. W.B., 205 N.J. 588, 603 n.4 (2011) (noting that "[a]s the finding of compliance with Miranda and voluntariness turn[s] on factual and credibility determinations, we need only find sufficient credible evidence in the record to sustain the trial judge's findings and conclusions"). This is because the trial judge is "substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Hubbard, 222 N.J. at 262 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We also defer to a trial judge's findings based on video recording or documentary evidence that is available for review. State v. Tillery, 238 N.J. 293, 314 (2019). The trial judge's factual findings may only be disregarded if they "are clearly mistaken." Hubbard, 222 N.J. at 262. However, we need not defer to the judge's legal conclusions that stem from those factual findings. Id. at 263.

7

The Fifth Amendment of the United States Constitution and New Jersey state law protect the right against self-incrimination. Miranda, 384 U.S. at 479; State v. S.S., 229 N.J. 360, 380 (2017). "A confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights." Hubbard, 222 N.J. at 265. A defendant may waive those rights, but the waiver must be "voluntary, knowing and intelligent" to be effective, and a defendant may choose to waive some or all of those rights. Ibid. (quoting State v. Hreha, 217 N.J. 368, 382 (2014)). "To eliminate questions about a suspect's understanding, the entire Miranda form should be read aloud to a suspect being interrogated, or the suspect should be asked to read the entire form aloud." State v. A.M., 237 N.J. 348, 400 (2019).

"[A] suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." State v. Alston, 204 N.J. 614, 622 (2011) (quoting State v. Reed, 133 N.J. 237, 253 (1993)). An equivocal invocation of the right to an attorney must be interpreted in the light most favorable to the defendant, State v. Wright, 97 N.J. 113, 119 (1984), and "a statement which arguably amounts to an asserting of [a defendant's] Miranda rights" requires the interrogator to

A-2359-19

"immediately cease and . . . inquire of the [defendant] as to the correct interpretation of the statement." State v. Fussell, 174, N.J. Super. 14, 21 (App. Div. 1980) (citation omitted). New Jersey's heightened standard of proof requires that "the State must 'prove beyond a reasonable doubt that the [defendant]'s waiver was knowing, intelligent, and voluntary in light of all the circumstances.'" Tillery, 238 N.J. at 316 (quoting State v. Presha, 163 N.J. 304, 313 (2000)).

A judge must consider "the totality of the circumstances surrounding the custodial interrogation" to determine whether the defendant's waiver is sufficient. A.M., 237 N.J. at 398. Factors to consider include "the [defendant's] age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." Ibid. (quoting State v. Miller, 76 N.J. 392, 402 (1978)). Additionally, the judge may consider defendant's "prior experience with the police," State v. Knight, 183 N.J. 449, 463 (citing Presha, 163 N.J. at 313), and the "period of time between 'administration of the [Miranda] warnings and the volunteered statement," ibid. (alteration in original) (quoting State v. Timmendequas, 151 N.J. 515, 614 (1999)).

Defendant did not invoke his Fifth Amendment right to counsel by signing the Philadelphia Card, and the detectives did not need to clarify what defendant intended when he signed the Philadelphia Card. The Philadelphia Card is designed to guide officers and detectives in informing suspects of their Miranda rights, and includes a question that asks "[d]o you want either to talk to a lawyer at this time, or to have a lawyer with you while we ask you questions?" There is no location on the Philadelphia Card for a suspect to sign to either invoke or waive his Miranda rights. Cf. State v. Hartley, 103 N.J. 252, 258 (1986) (examining a "Waiver of Rights" form and noting that because "the only place provided for one to sign the form came after the 'waiver' section," the suspect's signature's purpose "was not to acknowledge receipt of one's rights but rather to indicate a waiver of those rights"). The fact that defendant signed the bottom of the Philadelphia Card only confirms that he was informed of those rights and not that he invoked any of those rights.

Our Court has explained that "[t]o eliminate questions about a suspect's understanding, the entire Miranda form should be read aloud to a suspect being interrogated, or the suspect should be asked to read the entire form," and to the extent that is not done, "the suspect should be asked about his or her literacy and educational background." A.M., 237 N.J. at 400. After defendant read both

10

sides of the Philadelphia Card and signed one side, the Philadelphia detective returned to the interrogation room and confirmed that defendant read the card, could read and understand English, and understood his rights. And the Cherry Hill detectives read defendant the Cherry Hill Form before obtaining a signed waiver of his right to have counsel present during questioning.

The State established that defendant waived his <u>Miranda</u> rights. The Philadelphia detective provided defendant with the Philadelphia Card, allowed defendant time to read both the front and back of the card, and confirmed that defendant understood the card and his rights. And shortly after, Cherry Hill detectives entered the interrogation room, re-Mirandized defendant and obtained a waiver of his right to counsel. On the Cherry Hill Form, defendant answered "yes" to the question "[a]re you willing to talk with officers without consulting a lawyer, or having a lawyer present with you?"

The judge determined that "defendant knew what his rights were, voluntarily waived his rights, and he gave a statement. He never invoked his right to counsel. . . . The warnings were sufficient in this matter." The judge observed that "[d]efendant was [twenty-two-]years old," has a prior criminal history, and "he's mature enough to fully appreciate the significance of his waiver." Defendant also "did not appear to have trouble reading, writing, or

11

understanding the English language," which was confirmed by the detectives. The judge noted that Detective Daniello asked defendant "[a]re you willing to speak with us right now," to which defendant responded yes, and then Detective Daniello clarified his question by adding "[w]ithout having an attorney," to which the judge states defendant responded "[y]es, sir." The judge also found that the forms provided to the defendant and the questioning was not unconstitutionally vague or ambiguous because it "combined the knowledge of rights with the waiver of rights," and there was "no indication in this matter that the defendant was actually confused by the combination." Defendant was "relaxed" and "comfortable" while speaking to the detectives, "[t]here was no undue force, no pressure," defendant "clearly unders[tood] what was happening," and that "his rights were sufficient and were read to him and that he voluntarily and knowingly waived those rights." Defendant did not suggest that he did not understand his rights or that he wanted counsel present prior to speaking with the detectives. To the contrary, defendant assented on the Cherry Hill Form to speaking with the Cherry Hill Detectives without an attorney present. The judge's findings are supported by sufficient credible evidence in the record and are not clearly mistaken.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION