STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GERALD
KENNEDY, DEFENDANT-APPELLANT.

Argued March 6, 1984—Decided July 20, 1984.

*William Welaj*, Designated Counsel, argued the cause for appellant (*Joseph H. Rodriguez*, Public Defender, attorney).

*Josephine R. Potuto,* Assistant Prosecutor, argued the cause for respondent (*George L. Schneider,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this case defendant, while in custody awaiting sentencing on two robbery convictions, initiated dialogue with the authorities with respect to an unrelated homicide incident. Prior to questioning, defendant conferred with his attorney, who, arguably, did not place any limitations upon the ability of the defendant or the prosecutor to discuss the information defendant wished to impart. Defendant thereafter disclosed information to the prosecutor outside the presence of counsel, and proceeded to incriminate himself. We are now called upon to consider whether, in this context, defendant's incriminating statement was effected in violation of his fifth-amendment rights.

I

In May 1980 defendant, Gerald Kennedy, was in custody, awaiting sentencing for two robbery convictions. Contemplating the prospect of a severe sentence, he advised the Essex County Prosecutor's Office that he had information concerning various unsolved homicides that he wanted to exchange for a recommendation of a lighter sentence. Defendant was taken to the prosecutor's office on May 21, 1980, where he initially met with Detective Michael McGaughran, County Investigator with the prosecutor's office. The conversation focused on the 1976 homicide of Mark Arnold.

After approximately two hours, defendant requested that the conversation cease, so that he could consult with Richard D. Aljian, an attorney who was representing defendant on the unrelated robbery convictions. The investigator immediately terminated all questioning. Defendant's attorney was contact-

ed, and he came to the office, where he met with defendant for approximately one hour. Although defendant did not fully discuss his knowledge of the Arnold homicide with his attorney, Aljian testified that he advised his client that "he had an absolute right not to say anything and not to give any written statements."

While at the office, Aljian had a conversation with Lawrence Monaco, an Assistant Prosecutor for Essex County. Aljian told Monaco that his client, defendant, was awaiting sentencing on robbery convictions and wanted to bargain for a lighter sentence by relaying information about other crimes. Aljian then left the office, whereupon Assistant Prosecutor Monaco and Detective McGaughrin met with defendant. At approximately 6:30 p.m., Detective McGaughrin again advised defendant of his *Miranda* rights, which defendant indicated he understood. Defendant then gave a non-incriminating statement relating to the Arnold homicide.[1] At this point, the law-enforcement officials considered defendant as only an informant in that case.

On the following day, May 22, 1980, defendant again came to the prosecutor's office, where, during a morning talk with Assistant Prosecutor Monaco and Detective McGaughrin, he revealed a fact that he had earlier withheld—the full name of his girlfriend, Pat Sanders. Monaco and McGaughrin tracked down Sanders, who gave a statement later that same day that conflicted with defendant's earlier story and tended to implicate him.[2]

Now viewing the defendant as a suspect in the Arnold murder, Monaco and McGaughrin once again informed defend-

---

[1]Defendant related that on July 6, 1976, he, Willie Jenkins, Arthur Morris, and defendant's girlfriend, Pat Sanders, had gone to Arnold's apartment to buy cocaine. Shortly after they arrived, defendant and Sanders left Arnold's apartment, and, while waiting outside, heard two shots fired.

[2]Sanders contradicted defendant by stating that he was in Arnold's apartment, not outside, at the time the fatal shot was fired. Sanders testified to this effect at defendant's trial.

ant of his rights and confronted him with Sanders' story. At this time, defendant did not request that no questioning occur or that questioning occur only in the presence of counsel. He proceeded to talk with the prosecutor. However, at about 6:00 p.m., defendant stated that he wished to stop talking and return to jail. Questioning immediately ceased, and the three men proceeded downstairs. Defendant then asked what would happen if he failed to give a statement. McGaughrin responded that there would be an investigation, as a result of which defendant might be charged with murder. At that point defendant indicated that he wished to give a statement.

Detective McGaughrin once again read defendant his rights, asked if he understood those rights, and read defendant the waiver form. Defendant read the waiver form, said he understood it, and signed it. Defendant did not request that he be given the opportunity to confer with counsel or that counsel be present. He proceeded to give an incriminating statement,[3] which was then typed. Defendant admitted to the truth of the statement but refused to sign it. At no point during the entire course of events on May 22nd did defendant ask to see his attorney Aljian or to have his attorney present.

On October 21, 1980, defendant and one Willie Jenkins were indicted for the felony murder of Mark Arnold, attempted armed robbery, and conspiracy to commit robbery. Prior to trial, defendant moved for suppression of the incriminating statement made on May 22, 1980. The trial court conducted a *Miranda* hearing, at the conclusion of which it made factual findings conforming to the foregoing facts.

Specifically, the trial court determined that, on May 21, 1980, defendant, at his own request, was taken from jail to the prosecutor's office to discuss unsolved crimes in exchange for a favorable sentence recommendation. Defendant was advised of

---

[3]Defendant admitted that he and Jenkins planned to rob Mark Arnold, and that he was present when Jenkins fired the shots.

his rights, and after some discussion, he asked to speak with his attorney. At that point all questioning ceased. Defendant's attorney spoke with defendant, and afterwards defendant voluntarily chose to continue his discussions with a member of the prosecutor's office. On the next day, May 22, 1980, defendant did not at any time ask to see his attorney, but chose instead to resume discussion. Defendant was given his *Miranda* rights, which he knowingly and intelligently waived. He then made a voluntary statement, without any coercion by the investigating officers.

In accordance with these findings, the trial court denied defendant's motion to suppress the incriminating statements and defendant proceeded to trial. The jury found defendant guilty of felony-murder, attempted robbery, attempted armed robbery, and conspiracy to commit robbery. The trial court sentenced defendant to life imprisonment for the felony-murder conviction, merging with that charge the convictions for attempted robbery and attempted armed robbery. Defendant received a concurrent one- to three-years term for conspiracy.

Defendant subsequently filed a notice of appeal, alleging in pertinent part that the court erred in admitting into evidence his statement of May 22nd. The Appellate Division, in a *per curiam* opinion, affirmed the conviction, noting that the fact that a defendant has counsel does not preclude him *per se* from validly waiving his fifth-amendment rights.

Defendant then petitioned this Court for certification, which was granted, restricted to the issue of the admissibility of the statement given by defendant on May 22, 1980. 94 *N.J.* 567 (1983). On the State's motion, we subsequently ordered that the matter be remanded to the trial court for further fact-finding to determine more precisely the nature of any discussions between defendant's attorney and the assistant prosecutor who interrogated defendant.

On remand, the trial court found that the defendant would not discuss his knowledge of the homicide with Aljian; rather,

defendant "wished to discuss the information in question in confidence with the Prosecutor." The court characterized Aljian as one "fully aware that he could not control or stop the defendant from giving whatever information he had to the Prosecutor," and that Aljian gave warnings to the defendant, "fully aware that the defendant would go as far as the defendant wished to go and [was] hoping to discourage the defendant from going too far in his discussions with the Prosecutor." The court found as well that Aljian had spoken with the defendant and warned him not to implicate himself or to give written statements. Further, Aljian told Monaco that "he had [so] advised defendant." The court therefore arrived at two conclusions: first, that Aljian had placed no "limitations upon the Prosecutor's right to discuss the information with the defendant which the defendant wished to impart to that office"; and second, that "Aljian did request Assistant Prosecutor Monaco to advise him as to the status of this matter as soon as the information which the defendant had given to that office was verified as to its truthfulness and worth." Essentially, the court found that the attorney's words amounted only to warnings to the defendant, which defendant was free to heed or ignore.

## II

In *Miranda v. Arizona*, 384 *U.S.* 436, 458, 86 *S.Ct.* 1602, 1619, 16 *L.Ed.*2d 694, 714 (1964), the Supreme Court recognized that "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." Accordingly, the *Miranda* Court determined that the fifth and fourteenth amendments' prohibition against compelled self-incrimination require that custodial interrogation be preceded "by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 *U.S.* 477, 482, 101 *S.Ct.* 1880, 1883, 68 *L.Ed.*2d 378, 384 (1981). After

being advised of his *Miranda* rights, an accused may himself validly waive those rights and respond to interrogation. *North Carolina v. Butler*, 441 *U.S.* 369, 99 *S.Ct.* 1755, 60 *L.Ed.*2d 286 (1979).

■■ However, access to counsel is regarded as so essential to the vindication of the fifth-amendment privilege against self-incrimination that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda, supra,* 384 *U.S.* at 474, 86 *S.Ct.* at 1627, 16 *L.Ed.*2d at 723. The significance of the invocation of the right to counsel is based in part on an attorney's "unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation." *Fare v. Michael C.,* 442 *U.S.* 707, 719, 99 *S.Ct.* 2560, 2568, 61 *L.Ed.*2d 197, 208 (1979). We have long guarded against any interference with this important relationship between attorney and client, noting that "the assistance of counsel is essential to insuring fairness" in criminal prosecutions. *State v. Sugar,* 84 *N.J.* 1, 13 (1980). Thus, although an accused may waive his various *Miranda* rights and submit to interrogation, additional safeguards attend the waiver process when the accused asks for counsel. *Edwards, supra,* 451 *U.S.* at 484, 101 *S.Ct.* at 1884, 68 *L.Ed.*2d at 386. *Edwards* established the *per se* rule that an accused who invokes his right to counsel is not subject to further interrogation until counsel has been made available, "unless the accused himself initiates further communication, exchanges or conversations with the police." *Id.* at 484–85, 101 *S.Ct.* at 1884–85, 68 *L.Ed.*2d at 386. To establish a waiver under such circumstances, it would thus be a "necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Id.* at 485 n. 9, 101 *S.Ct.* at 1885 n. 9, 68 *L.Ed.*2d at 387 n. 9; *see State v. Wright,* 97 *N.J.* 113, 122–123 (1984); *State v. McCloskey,* 90 *N.J.* 18, 21, 28 (1982).

This prophylactic requirement is premised in part on the recognition that "the reasons to keep the lines of communica-

tion between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto." *Michigan v. Mosley*, 423 *U.S.* 96, 110 n. 2, 96 *S.Ct.* 321, 329 n. 2, 46 *L.Ed.*2d 313, 325 n. 2 (1975) (White, J., concurring). When, however, the accused is advised of his rights and chooses *not* to request counsel, so that "the interrogation continues without the presence of an attorney and a statement is taken," a heavy but lesser burden rests on the government "to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra,* 384 *U.S.* at 475, 86 *S.Ct.* at 1628, 16 *L.Ed.*2d at 724. In *Miranda* the Court specifically noted that "an express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement" can constitute a waiver. *Id.* In making this relevant inquiry, the emphasis has focused upon whether, as an individual, case-by-case matter, a waiver of the right to counsel has been knowing, voluntary and intelligent. *See Johnson v. Zerbst*, 304 *U.S.* 458, 464, 58 *S.Ct.* 1019, 1023, 82 *L.Ed.* 1461, 1466 (1938). As stated in *North Carolina v. Butler, supra,* 441 *U.S.* at 374–75, 99 *S.Ct.* at 1757–58, 60 *L.Ed.*2d at 293, "[e]ven when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused."

The trial court in the instant matter conducted this inquiry, and determined that on the date in question—May 22nd—defendant was advised of his rights, which he expressly, knowingly, and intelligently waived. As found by the court, defendant gave his statement voluntarily. At no time during the course of questioning did he ask to see the attorney representing him on the other charges and with whom he had conferred on these particular charges. Furthermore, defendant's waiver was completely knowing and intelligent. Both defendant and his attor-

ney were fully aware that defendant had the unfettered right to have counsel present or available, but that the interrogation, at the defendant's choice could and would occur without counsel's presence.  We see no reason to dispute these conclusions, based as they are on the trial court's first-hand observation of the witnesses to the events involved and adequately supported by the evidence. *See State v. Johnson*, 42 *N.J.* 146, 161 (1964).

■ Defendant maintains, however, that the fact that the interrogators knew that he was represented by an attorney should be considered a significant circumstance in assessing the validity of the waiver.  In the context in which defendant gave his statement, we do not find this circumstance determinative of the fifth-amendment issue.  Rather, the pivotal consideration in making the constitutional inquiry is whether, upon being advised of his rights, defendant indicated that he wanted the assistance of counsel with respect to the particular charge in question, and whether he wanted to have counsel available or present before any further interrogation. *See U.S. v. Brown*, 569 *F.*2d 236 (5th Cir.1978); *U.S. v. Crook*, 502 *F.*2d 1378 (3d Cir.1974), *cert.* denied, 419 *U.S.* 1123, 95 *S.Ct.* 808, 42 *L.Ed.*2d 823 (1975).

In this case, defendant consulted with his attorney on the instant charge and the impending interrogation concerning its subject matter.  As noted, he was immediately given the opportunity to see his attorney on May 21st, when he was considered an informant only.  He clearly understood that he could continue to consult with his attorney at any time, even when the tide of questioning might turn against him.  There is no suggestion that defendant was mistaken or confused as to whether his attorney could represent him on the charge that was the subject of the interrogation and with respect to which the attorney had already given his advice.  Moreover, the facts clearly disclose that defendant had every opportunity to terminate the interrogation, and in fact did do so on one occasion, only to initiate the dialogue once more.

██ Further, it was determined on remand that defendant's attorney only admonished defendant not to incriminate himself, a warning defendant was free to heed or ignore. The court found that the attorney himself had placed no limitations upon the prosecutor's right to question defendant. The bare fact that defendant had counsel representing him cannot be construed to preclude defendant from effectively waiving his right to remain silent and to have an attorney present. *See State v. Graham*, 59 *N.J.* 366, 376 (1971). Simply stated, the nature of Aljian's words and actions comprising the broad conditions he imposed were insufficient to insulate defendant from further questioning when defendant himself initiated further interrogation and knowingly and voluntarily waived his right to have counsel present.

██ We hasten to stress that a prosecutor must diligently honor a defendant's request—however ambiguous—to terminate interrogation or to have counsel present during interrogation. *See State v. Wright, supra*, 97 *N.J.* 113; *State v. McCloskey, supra*, 90 *N.J.* 18. We have carefully guarded this principle that, in order to permit a full opportunity to exercise the privilege against self-incrimination, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda, supra*, 384 *U.S.* at 467, 86 *S.Ct.* at 1624, 16 *L.Ed.*2d at 719. The facts before us, however, do not even remotely suggest a breach of this mandate. Once the fateful interrogation had resumed, there was not the slightest indication that defendant wished the questioning to terminate or that he wished to continue the interrogation only in the presence of counsel. Furthermore, there was no request, even equivocally made, that interrogation cease or continue only in counsel's presence. The earlier precatory admonition of the attorney—that defendant should cease giving information if and when he began to incriminate himself—cannot be equated with a request that the interrogation cease automatically at some future point. The trial court

concluded, as do we, that this advice on the part of counsel reflected defendant's own wishes in the matter and evidenced a desire on defendant's part to engage in further discussions with the prosecutor. To hold otherwise in these circumstances would misplace the right to waive fifth-amendment protection. It would impose the onus on the prosecutor to exercise the critical and dispositive responsibility for determining when defendant's best interests would warrant the cessation of questioning. This responsibility, however, clearly and rightfully devolves on defendant's lawyer or defendant himself when he has been provided with full access to counsel. We recognize, of course, that the State may not interfere with or prevent defendant's relationship with his attorney. The State, however, cannot be expected, let alone required, to assume the role of surrogate defense counsel.

We are presented here with the classic case of the criminal defendant who "stubbed his toe." *State v. McKnight,* 52 *N.J.* 35, 52 (1968). As found by the Appellate Division:

> The fact that defendant had counsel did not preclude him from waiving his right to remain silent and to have counsel present during the questioning despite arrangements counsel may have made with the authorities not to let his client incriminate himself. *See State v. Graham,* 59 *N.J.* 366, 376 (1971). Defendant was obviously in a dilemma. He wanted to impress the authorities with his veracity in time to ameliorate the substantial sentence he faced for the two robberies. It was difficult to do so, however, without incriminating himself.

Defendant was free to make his choice, and that choice was voluntarily and knowingly exercised.

Accordingly, the judgment below is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.