**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1498-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEROME BEARFIELD, a/k/a
JEROME W. BEARFIELD, JR.,

    Defendant-Appellant.

_____

Submitted October 4, 2021 – Decided November 18, 2021

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-08-2362.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

An Essex County grand jury indicted defendant Jerome W. Bearfield, Jr., for first-degree murder, N.J.S.A. 2C:11-3(a)(l)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). After an N.J.R.E. 104(c) hearing, the judge ruled two statements defendant made to law enforcement officers were admissible.

Defendant then pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(l), and unlawful possession of a handgun, specifically reserving his right to challenge the court's ruling as to the admissibility of the statements on appeal. In accordance with the State's recommendation per the plea agreement, the judge sentenced defendant to a twenty-five-year term of imprisonment with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and a twelve-and-one-half-year period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c). He imposed a concurrent sentence on the weapons offense.

Before us, defendant raises the following points for our consideration:

> POINT I
>
> DEFENDANT DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE

HIS RIGHTS AGAINST SELF-INCRIMINATION BECAUSE THE INTERROGATING OFFICER, KNOWING THAT DEFENDANT WAS ASSIGNED COUNSEL, FAILED TO QUESTION DEFENDANT WHETHER HE WANTED TO WAIVE HIS RIGHTS IN LIGHT OF THE FACT THAT HE WAS REPRESENTED BY COUNSEL BUT HIS ATTORNEY WAS NOT PRESENT.

POINT II

THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE THE COURT'S REJECTION OF MITGATING FACTORS WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE IN THE RECORD.

We have considered these arguments in light of the record and applicable legal principles. We affirm.

I.

Detective Robert O'Neal from the Essex County Prosecutor's Office (ECPO) was the only witness to testify at the <u>Rule</u> 104 hearing. O'Neal was assigned to investigate the shooting death of Basil Howard at approximately 2:05 a.m. in the morning of May 5, 2018, in East Orange. Surveillance footage led police to obtain search warrants for defendant's home and his mother's home, as well as an arrest warrant for defendant, who turned himself in to the Newark Police Department at 8:10 p.m. on Friday, May 11, 2018.

O'Neal identified a video recording of the interview of defendant he and other officers conducted, which was played for the judge. O'Neal read defendant his Miranda[1] rights from a form and asked if defendant understood; defendant replied, "Correct." He then asked defendant to read them himself, which he did, after which O'Neal asked defendant to read that portion of the form indicating he waived those rights and agreed to answer the detective's questions; defendant complied and then signed the form as requested.

Afterward, O'Neal asked if defendant "wish[ed] to give a statement and tell us [his] side of the story?" Defendant immediately responded by stating that he was driving with his mother from a party when a car struck his in the rear. Defendant was about to exit the car but heard shots and drove away. O'Neal had defendant identify still surveillance photos showing defendant's car. The interrogation ended shortly after 10:00 p.m., and defendant was transported to the county jail.[2]

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] We independently reviewed the video interrogation. Although not discussed at the Rule 104 hearing, the detectives made defendant aware that surveillance cameras captured the entire incident and told defendant that neither they, nor any reasonable person, would believe his story.

On Saturday, May 12, 2018, O'Neal received word from his superior, Lieutenant Carter,[3] that an assistant prosecutor had contacted Carter and said defendant wished to speak with him. The assistant prosecutor and defense counsel at the <u>Rule</u> 104 hearing stipulated to the introduction of a memo from Assistant Prosecutor Joseph Giordano in lieu of calling Giordano as a witness. Giordano's memo to the file, dated May 14, 2018, said:

> On Saturday, May 12, 2018, I received a text message from Assistant Deputy Public Defender James McHale indicating he was covering CJP court and the defendant requested to speak to Detective Carter of this office. The message was received via SMS. A screen shot of the message is saved and attached to this memo.

The text message said: "Saturday 3:51 p.m. Hey bud, sorry to bug you on the weekend but I was just covering CJP, [J]erome [B]earfield[,] on homicide came up. Bearfield requested to speak to Detective Carter of ECPO. Just passing along the request."[4]

O'Neal testified that he, Carter and two other detectives arrived at the county jail and recorded their meeting with defendant on a hand-held audio recorder. The recording was played, in part, for the judge. The interview began

---

[3] The first name of the lieutenant does not appear in the record.

[4] The screenshot of the text message included other banter between the assistant prosecutor and the assistant public defender that is not relevant to our decision.

at 8:33 p.m. with O'Neal asking: "I was advised today by my supervisor, Lieutenant Carter, that you . . . had somebody reach out to the Prosecutor's Office and you wish[ed] to speak to us. Is that correct?" Defendant answered, "Correct." O'Neal then repeated the process he used the day before to advise defendant of his <u>Miranda</u> rights. Defendant said he understood those rights and wished to make a statement.

Defendant proceeded to tell the detectives that when the accident occurred, he exited his car to approach the car behind him. That driver exited the car and the trunk "popped" open; defendant was "intoxicated" and "scared." When the other driver "went to the trunk," defendant said he "didn't allow him to come back up with nothing in the trunk." To "protect [him]self," defendant shot the man five times with a ".38 Smith & Wesson."

Defense counsel at the <u>Rule</u> 104 hearing argued the detectives took "untoward action" by going to the jail on the weekend to interview defendant knowing he had an attorney. Counsel argued that in doing so, the detectives violated defendant's right to counsel:

> [T]here's no indication . . . McHale did not wish to be present. . . . [The text] was simply an indication . . . [defendant had] a desire to speak to the police.
>
> . . . [The]re's no indication . . . McHale could not be there, that he did not wish to be there.

A-1498-19

. . . .

> [I]t has to be determined in . . . favor of the defendant . . . . It's quite clear in that text message that [defendant] wanted to speak, but it's not clear . . . that he wished to do it un-counseled.

> . . . .

> [Defendant] . . . confided in his attorney and his attorney abandoned him.

Defense counsel also argued it was apparent from the audio recording that defendant was incoherent.

The prosecutor asserted that both statements clearly reflected "defendant made a knowing, intelligent, and voluntary waiver of his rights." He argued the second interview was "not prompted by the detectives," nor were they aggressive in their questioning of defendant.

As to the May 11 statement, the judge ruled that O'Neal adequately reviewed each of the Miranda rights with defendant, who acknowledged he understood his rights and then waived those rights. The judge found there was "no force or coercion . . . that would make th[e] first statement an involuntary statement in any way."

As to the second statement from May 12, the judge concluded from the text message that defendant must have conveyed his desire to speak with Carter

7

to his attorney, and the attorney "immediately . . . reached out to the assistant prosecutor . . . and advised him of such." The judge noted that the text did not indicate the interview should wait until Monday or that the attorney "wanted to be present or was demanding to be present." The judge said the "clear implication was that . . . it's okay for you to speak to my client. He wants . . . to speak to you." The judge said but for that communication, O'Neal would not have gone to the jail to meet defendant. The judge found O'Neal credible, and concluded the detective had once again reviewed the <u>Miranda</u> rights with defendant before speaking with him. He rejected defendant's argument that the detective should have asked doctors, nurses, or other jail personnel about defendant's condition and whether he had recently taken medication. The judge found the detective had no reason to believe defendant was "not thinking clearly" or was "under the influence of something." The judge concluded there was nothing in defendant's demeanor that would cause O'Neal to make further inquiry.

The judge concluded that the State proved beyond a reasonable doubt that the <u>Miranda</u> requirements were met, and defendant understood and knowingly and intelligently waived his rights before making both statements. The judge further concluded that at no time did defendant invoke, or attempt to invoke, his

8

right to counsel, and "under the totality of the circumstances[,] the statements were both made voluntarily." He ruled both statements were admissible at trial.

## II.

Relying primarily on the Court's decision in State v. Reed, 133 N.J. 237 (1993), defendant contends the State failed to demonstrate beyond a reasonable doubt that defendant made a "knowing[], intelligent[] and voluntar[y]" waiver of his rights before making the second statement to the detectives on May 12. We disagree.

"We review the trial court's factual findings as to defendant's Miranda waiver in accordance with a deferential standard. We consider whether those findings are 'supported by sufficient credible evidence in the record.'" State v. Tillery, 238 N.J. 293, 314 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). "Therefore, '[a] trial court's findings should be disturbed only if they are so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. A.M., 237 N.J. 384, 395–96 (2019) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "To the extent that a trial court determination involved legal conclusions, we review those conclusions de novo." Tillery, 238 N.J. at 314 (citing A.M., 237 N.J. at 396).

9

"The Miranda warnings ensure 'that a defendant's right against self-incrimination is protected in the inherently coercive atmosphere of custodial interrogation.'" Id. at 315 (quoting A.M., 237 N.J. at 397). A defendant, however, may waive his Miranda rights, and "the State must 'prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances.'" Id. at 316 (quoting State v. Presha, 163 N.J. 304, 313 (2000)).

To the extent defendant contends Detective O'Neal's administration of the Miranda rights to defendant was deficient, thereby vitiating his waiver of those rights, the argument lacks sufficient merit to warrant discussion. R. 2:11-3(e)(2). As the Court has said:

> Our law, however, does not require that a defendant's Miranda waiver be explicitly stated in order to be effective. "A waiver may be 'established even absent formal or express statements.'" Indeed, "[a]ny clear manifestation of a desire to waive is sufficient."
>
> . . . .
>
> "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."
>
> [Tillery, 238 N.J. at 316 (alteration in original) (citations omitted).]

A-1498-19

The crux of defendant's argument centers more on an "ancillary right[] . . . essential to preserving the privilege against self-incrimination," i.e., the right to counsel.  Reed, 133 N.J. at 251 (citing State v. Hartley, 103 N.J. 252, 290 (1986)).  In Reed, the defendant was in police custody about to be interrogated about a brutal homicide, when his girlfriend contacted an attorney seeking assistance.  Id. at 241.  The attorney said he was dispatching an associate to the prosecutor's office, and the girlfriend told one of the officers "that an attorney was on his way and asked that the police not question [the] defendant until the attorney arrived."  Ibid.  However, police did not honor that request, moved the defendant to a different building, and began interrogating him after administering Miranda rights.  Id. at 241–42.

When the attorney arrived, the prosecutor indicated the defendant was a witness, not a suspect, and that the attorney had no right to intercede "into an investigation."  Id. at 243.  He told counsel that police would call him if the defendant requested an attorney.  Ibid.  The defendant subsequently confessed to the murder.  Id. at 244–45.

The defendant was convicted of murder, and, on appeal, we reversed his convictions on other grounds but concluded his confession was properly admitted.  Id. at 245–46.  The Court granted the defendant's petition for

11

certification, "limited to the issue of whether . . . the refusal to inform [the] defendant of the attorney's presence had violated defendant's privilege against self-incrimination and rendered his confession inadmissible." Id. at 246–47.

In concluding the defendant's statements were inadmissible, the Court said:

> A suspect, held in custody, who "has been provided with full access to counsel" may decline to make use of counsel during interrogation. An attorney-client relationship between a suspect held in custody and an attorney, however, need not depend on a specific request by the suspect for representation by that attorney.
>
> We are satisfied that an attorney-client relationship should be deemed to exist under such circumstances between the suspect and an attorney when the suspect's family or friends have retained the attorney or where the attorney has represented or is representing the suspect on another matter. When, to the knowledge of the police, such an attorney is present or available, and the attorney has communicated a desire to confer with the suspect, the police must make that information known to the suspect before custodial interrogation can proceed or continue. Further, we hold that the failure of the police to give the suspect that information renders the suspect's subsequent waiver of the privilege against self-incrimination invalid per se.
>
> [Id. at 261–62 (emphasis added) (quoting State v. Kennedy, 97 N.J. 278, 288–89 (1984)).]

A-1498-19

The factual differences between <u>Reed</u> and this case are obvious. There, the police denied the defendant access to an attorney who was ready, willing, and able to assist him before and during questioning, thereby thwarting the attorney-client relationship. Here, defendant was fully aware that he was represented by counsel, and, indeed before interrogating defendant, O'Neal confirmed that the detectives were at the jail at defendant's request, conveyed through his attorney. The judge's conclusion that defendant initiated contact with the detectives through his attorney was amply supported by this record.

We agree with the State that the facts here are more analogous with those presented in <u>Kennedy</u>, where the defendant, through his attorney, advised investigators of his desire to provide information on unsolved homicides in return for lighter sentences on pending, unrelated charges. 97 N.J. 281. The defendant was <u>Mirandized</u> multiple times and, without counsel present, made incriminating statements that resulted in his being charged with homicide. <u>Id.</u> at 282–83.

In considering the defendant's challenge to the admission of the statements at trial, the Court rejected the argument "that the fact that the interrogators knew [the defendant] was represented by an attorney should be considered a significant circumstance in assessing the validity of the waiver." <u>Id.</u> at 287. It

13

said, "The bare fact that defendant had counsel representing him cannot be construed to preclude defendant from effectively waiving his right to remain silent and to have an attorney present." Id. at 288. The Court held it was not up to the prosecutor "to exercise the critical and dispositive responsibility for determining when defendant's best interests would warrant the cessation of questioning," because the "responsibility . . . clearly and rightfully devolves on defendant's lawyer or defendant himself when he has been provided with full access to counsel." Id. at 289.

In this case, defendant asked his attorney to contact the investigators, and his attorney conveyed that request to an assistant prosecutor. The attorney imposed no conditions precedent to the investigators commencing the interview, and O'Neal confirmed with defendant that he had asked to speak with the investigators before the interrogation even began. Moreover, O'Neal again administered Miranda rights to defendant, who then waived those rights voluntarily, fully knowing that he was represented by counsel. We affirm the denial of the motion to suppress the May12 statement and affirm defendant's convictions.

A-1498-19

## III.

Defendant argues his sentence was excessive because the judge failed to consider relevant mitigating sentencing factors that were supported by credible evidence in the record. Specifically, defendant contends the record supported a finding of mitigating factors three, four and five. See N.J.S.A. 2C:44-1(b)(3) (defendant acted under strong provocation); (b)(4) (substantial grounds excused or justified defendant's conduct, although failed to provide a defense); and (b)(5) (the victim induced or facilitated commission of the crime).

"Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). An appellate court may disturb a sentence only upon "a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

Whether a sentence will "gravitate toward the upper or lower end of the [statutory] range depends on a balancing of the relevant factors." State v. Case, 220 N.J. 49, 64 (2014) (citing Fuentes, 217 N.J. at 72).

The judge found aggravating factors three, six and nine. See N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (a)(6) (the extent of defendant's prior record and the seriousness of the current offense); and (a)(9) (the need to deter defendant and others). These findings were based on substantial evidence, including defendant's three prior indictable convictions, multiple violations of probation, five disorderly persons convictions and two active final restraining orders.

The judge specifically addressed the mitigating factors now once again asserted on appeal. He found that defendant did not act under strong provocation, noting that an auto accident "is in no way somehow grounds for [defendant] to do what [he] did," and he rejected mitigating factor four for the same reasons. The judge concluded the victim in no way induced or facilitated the homicide "just because his car struck [defendant's] car. It was an accident, an auto accident."

Defendant contends the judge minimized the circumstances he faced on the night of the shooting, reducing the incident to merely "an auto accident." He

16

argues the judge failed to consider defendant's concern for his own safety and that of his mother, who was a passenger in his car. However, there was nothing in the record to indicate that the victim posed any threat to defendant. We defer to the judge's conclusion that none of the mitigating factors applied because they were not supported by credible evidence in the record.

In short, the judge properly considered the aggravating and mitigating sentencing factors in this case, and we see no reason to disturb the exercise of his broad discretion in fashioning an appropriate sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1498-19