**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2516-19

IN THE MATTER OF DANIEL
SKRABONJA, BAYSIDE STATE
PRISON, DEPARTMENT OF
CORRECTIONS.

_____

Argued November 1, 2021 – Decided December 17, 2021

Before Judges Rothstadt and Natali.

On appeal from the Civil Service Commission, Docket No. 2019-2691.

Kevin P. McCann argued the cause for appellant Daniel Skrabonja (Chance & McCann, LLC, attorneys; Matthew Weng, on the briefs).

Jana R. DiCosmo, Deputy Attorney General, argued the cause for respondent New Jersey Department of Corrections (Andrew J. Bruck, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Jana R. DiCosmo, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent Civil Service Commission (Eric A. Reid, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Daniel Skrabonja appeals from the Civil Service Commission's (CSC) final administrative decision, adopting an Administrative Law Judge's (ALJ) recommendation to affirm Bay State Prison's (BSP) termination of his employment as a senior correction officer (SCO). The termination was based on Skrabonja having committed nine violations, including conduct unbecoming a public employee and intentionally falsifying records. Many of them related to his participation in a scheme with other correction officers (COs) to force inmates to turn over to the COs commissary items the inmates purchased in exchange for the inmates being allowed to receive minimal services to which they were entitled. The violations also related to his failure to make required log entries, his falsifying other log entries, and his lying to investigators. Notably, Skrabonja admitted to his misconduct and accepted full responsibility.

On appeal, Skrabonja argues the CSC's decision was arbitrary, capricious, and unreasonable because it failed to require BSP to apply progressive discipline to mitigate his penalty in light of (1) his unblemished employment record; (2) his learning disability; (3) his then recent assignment to the unit where the scheme was carried out; (4) BSP's violation of his Fifth and Sixth Amendment rights by threatening him with criminal charges and interviewing him in a

A-2516-19

criminal investigation without providing Miranda[1] warnings; and (5) BSP's failure to report alleged criminal conduct to the county prosecutors.

We affirm because Skrabonja failed to prove the CSC's determination was an abuse of its discretion, especially in light of Skrabonja's violations and their relationship to his position as an SCO. Moreover, Skrabonja's removal was justified and does not shock our sense of fairness despite Skrabonja's unblemished record because his misconduct was so severe.

The facts leading to Skrabonja's termination were generally not in dispute. They are summarized as follows. Skrabonja was hired as a CO at BSP in 2012. Prior to being hired, he had received from the CSC an accommodation of extra time for the civil service exam because of a learning disability. However, on his job application, he did not note any accommodations were necessary for him to perform the duties of CO, nor did he ever request an accommodation while working because he believed he did not need one and his impairment did not affect his ability to perform his job. Also, when he was hired, Skrabonja confirmed his receipt, review, and understanding of the many policies and procedures his employment with BSP was conditioned on, including the "New

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2516-19

Jersey Department of Corrections, Human Resources Bulletin 84-17, As Amended, Disciplinary Action Policy," (HRB 84-17).

After his employment commenced, Skrabonja witnessed other COs force inmates to turn over commissary items to receive services. Despite that knowledge, Skrabonja never reported the misconduct and was not disciplined for his failure to do so until his involvement in the misconduct was discovered in 2016. Until 2016, he otherwise performed his duties without incident and in fact he was promoted to SCO.

On June 17, 2016, Skrabonja began working in "Alpha" unit. The next day, he witnessed SCO Tyler DeShields force inmates who wanted to shower, use the telephone, or receive other services, to first place various commissary items they had purchased into a brown paper bag. Skrabonja later came upon the bag in an office, looked in the bag, and moved it behind a desk. The contents of the bag were later secured in an officer's locker, which Skrabonja locked using a personal lock for which he had the key. While assigned to "Alpha" unit, Skrabonja also did not log in visitors and falsified other records by stating he performed duties that he did not perform. Moreover, he sat at the officer's desk within the unit in a reclining position, with his feet on the desk, and hands behind his head.

A-2516-19

On June 25, 2016, BSP's Administrative Office received an inmate inquiry form which complained about DeShields's conduct. The author of the note was an anonymous inmate, who described the "extortion" by DeShields on June 18, 2016. In the note, the inmate threatened violence if officials did not address the misconduct.

John Gardner, a senior investigator at BSP, conducted an investigation into the inmate's claims. On June 30, 2016, Gardner reviewed surveillance video and observed Skrabonja look inside the bag containing inmates' commissary items, fold it closed and place it on the floor behind the officers' desk in the unit. Investigators also observed Skrabonja seated in a reclining position with his feet on the officer's desk and hands behind his head. The same day, Gardner conducted a search that included the locker where Skrabonja secured the bag, and Gardner found the prisoners' property.

On July 15, 2016, Gardner notified Skrabonja that he was subject to an administrative disciplinary investigation.[2] During an ensuing interview,

---

[2] Skrabonja signed a Weingarten Administrative Rights form indicating he understood the administrative nature of the investigation and his entitlement to union representation during questioning. The Weingarten Administrative Rights form provides notice to an employee of their right to union representation during an employer's investigation of misconduct. The United States Supreme Court first defined and recognized this right derived from the National Labor Relations

Skrabonja lied to investigators as to the events of June 18, 2016, and about whether he had the key to the locker.

After Gardner completed his investigation, BSP served Skrabonja with a Preliminary Notice of Disciplinary Action, charging violations under N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming an employee, N.J.A.C. 4A:2-2.3(a)(12), other sufficient cause, HRB 84-17, B-1 neglect of duty, loafing, idleness or willful failure to devote attention to tasks which could result in danger to persons or property, HRB 84-17, C-8 falsification: intentional misstatement of material fact in connection with work, employment application, attendance, or in any record, report, investigation or other proceeding, HRB 84-17, C-11 conduct unbecoming an employee, HRB 84-17, C-17 possession of contraband on State property or in State vehicles, HRB 84-17, D-7 violation of administrative procedures and/or regulations involving safety and security, HRB 84-17, E-1 violation of a rule, regulation, policy, procedure, order or administrative decision, HRB 84-17, E-2 intentional abuse or misuse of authority or position.

---

Act (NLRA), 29 U.S.C.S. §§ 151 to 169. NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975). The New Jersey Supreme Court recognized the similarities between the NLRA and the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -29, which applies to state employees, and adopted the "Weingarten rule" requiring notice of this right. In re Univ. of Med. & Dentistry of N.J., 144 N.J. 511 (1996).

A-2516-19

Thereafter, an informal pre-termination hearing was held by a BSP hearing officer, who found "[m]anagement ha[d] provided sufficient reason to suspend [Skrabonja] from duty." On October 27 and November 30, 2016, a Department of Corrections (DOC) hearing officer held a formal hearing, in which the parties presented and examined witnesses and evidence. Thereafter, the DOC issued a Final Notice of Disciplinary Action, including a comprehensive decision which concluded all charges against Skrabonja were sustained and imposed a disciplinary action of removal despite an unblemished record because of the high standard DOC employees are held to, which Skrabonja failed to meet by his serious misconduct.

Skrabonja appealed and the matter was referred to the Office of Administrative Law, where an ALJ presided over a hearing, and then issued his decision and recommendation on December 6, 2019. In his decision, the ALJ summarized Skrabonja's testimony as follows:

> During his testimony, he admitted to all charges against him. He also read a prepared statement . . . into the record in which he accepted responsibility for his actions. He apologized for the danger he exposed everyone to and expressed his deep remorse for the same. He asked to be given a second chance and to be permitted to return to his employment as an SCO.

The ALJ also found Skrabonja was aware COs forced inmates to turn over their commissary items, possessed a key to a personal lock securing these items in an officer's locker, intentionally provided false information to investigators, was sitting with his hands behind his head and feet on the unit's officer's desk, being inattentive to inmates in his care, made false entries and failed to make required entries in logbooks. Those facts, considered alongside Skrabonja's and other witnesses' testimony, and controlling case law, led to the ALJ's conclusions that Skrabonja violated each charge against him.

Finally, the ALJ determined the appropriate penalty for Skrabonja's serious violations was removal. The judge considered HRB 84-17 to determine the range of penalties authorized for Skrabonja's misconduct, which included removal. Skrabonja argued his penalty should have been mitigated because he was new to "Alpha" unit. The judge concluded Skrabonja's argument was meritless because "[h]is conduct would be considered egregious anywhere within the walls of the BSP."

Skrabonja also contended his learning disability should have been a mitigating factor. The judge gave "very little weight" to this argument because Skrabonja testified "he never requested an accommodation at the BSP because he did not require one," and "no competent evidence [was] presented that his

prior diagnosis of attention deficit, hyperactivity disorder (ADHD)[3] affected his ability to know right from wrong."

On January 15, 2020, the CSC issued its Final Administrative Action that "accepted and adopted the [f]indings of [f]act and [c]onclusion[s]" of the ALJ's initial recommendation dated December 6, 2019, found "the action of the appointing authority in removing Skrabonja was justified," affirmed BSP's action, and dismissed Skrabonja's appeal. This appeal followed.

On appeal, Skrabonja contends the CSC's decision was arbitrary and capricious because "the agency violated [its] princip[les]" by "failing to apply progressive discipline" in response to his misconduct, especially since he had no prior history of misconduct. Skrabonja also contends its decision to remove him "shocks one[']s sense of fairness." He also argues removal was inappropriate where, "during the interview with [Gardner], [Skrabonja] was threatened with criminal charges and [ten] years in jail but was never informed of his right to counsel"; "the charges were never forwarded to the county prosecutor for review prior to [BSP] issuing such a threat in violation of

---

[3] "The essential feature of [ADHD] is a persistent pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 61 (5th ed. 2013).

Attorney General guidelines"; he was new to "Alpha" unit; and "[he] has a learning disability" which delayed his ability to tell right from wrong. We disagree.

Our review of a final agency decision is limited, and its decision is disturbed only upon a showing that it was "arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." In re Carter, 191 N.J. 474, 482 (2007) (quoting Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). In reviewing agency determinations, we are generally limited to determining:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 482-83 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

When an agency's decision meets those criteria, then we owe "substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007) (citations omitted). Also, although we are not bound by an "agency's interpretation of a statute or its determination of a strictly legal issue," if the agency's decision is supported by substantial

10

evidence, we "may not substitute [our] own judgment for the agency's even though [we] might have reached a different result." Carter, 191 N.J. at 483 (citations omitted).

Similarly, our review of disciplinary sanctions is limited by the same deferential standard. Herrmann, 192 N.J. at 28. With that deference in mind, the test when reviewing administrative sanctions is "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29.

The CSC has broad discretion to remove employees, including SCOs. Herrmann, 192 N.J. at 22 (citing N.J.S.A. 11A:2-6). Still, the CSC must decide whether removal is appropriate after a hearing, N.J.S.A. 11A:2-6; it must follow the law; its findings of fact must be supported by substantial evidence; and its conclusion cannot be clearly unjustified by those facts. Carter, 191 N.J. at 482-83.

Here, the parties do not dispute whether a fair hearing was held or whether there was substantial evidence that Skrabonja's actions violated the conditions

of his employment as defined by the applicable regulations and the controlling handbook. In fact, Skrabonja admitted to being aware officers forced inmates to turn over their commissary items, storing those items in a locker secured by a personal lock, for which he held the key, making false entries and failing to make proper entries in logbooks, sitting with his hands behind his head and feet on the unit's officer's desk, being inattentive to inmates in his care, misusing his authority and position as an SCO, and lying to investigators about his misconduct on June 18, 2016. Therefore, it is undisputed the CSC's finding, that discipline was warranted, was supported by substantial evidence.

Turning to the issue of Skrabonja's removal being sustainable despite the lack of progressive discipline, we initially observe again that agencies have broad discretion in deciding a disciplinary action to the extent that the action does not shock one's sense of fairness. Herrmann, 192 N.J. at 28-29. We also note removal for a first offense is expressly provided for in HRB 84-17, despite its purpose to "foster progressive discipline." HRB 84-17 at 2.

When followed, progressive discipline manifests in either a gradually increasing penalty for reoffenders or mitigating the penalty for a current offense if, after considering mitigating or aggravating factors, the authorized penalty is inappropriate. Herrmann, 192 N.J. at 31, 33. Factors that may be considered

are "length of service," "total employment record," or "other legitimate circumstances" that would "cause [the penalty] to be inappropriate." HRB 84-17 at 2.

As Skrabonja acknowledges on appeal, progressive discipline is not mandated in all cases. In cases where progressive discipline may apply, the CSC must consider the seriousness of the charges when making a final determination. Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980).

Reviewing courts will generally uphold removal without progressive discipline when reviewing an agency's disciplinary action where (1) "the misconduct is severe," (2) "when [the misconduct] is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position," or (3) "when application of the principle would be contrary to the public interest." Herrmann, 192 N.J. at 33.

In considering the appropriateness of an SCO's removal, it must be with the understanding that COs, like police officers, are held to a higher standard, because they are deemed by statute to be "peace officers" with "full police powers," see N.J.S.A. 2A:154-4, and their "primary duty is to enforce and uphold the law" and to "represent[] law and order to the citizenry [by] present[ing] an image of personal integrity and dependability in order to have

13

the respect of the public." Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965); see, e.g., Henry, 81 N.J. at 579-80 (finding removal warranted despite no history of misconduct because "[t]he falsification of a report by an SCO can disrupt and destroy order and discipline in a prison"); Bowden v. Bayside State Prison, 268 N.J. Super. 301, 306 (App. Div. 1993) (finding removal warranted despite no prior major disciplinary record where SCO committed conduct unbecoming an employee by playing cards with inmates and paying gambling debts with cigarettes).

Against this backdrop, here, we conclude it was neither arbitrary, capricious nor unreasonable for the CSC to affirm Skrabonja's removal without progressive discipline. See Herrmann, 192 N.J. at 33. The CSC's final decision to uphold Skrabonja's removal was supported by the credible evidence, was within its discretion, and did not shock our sense of fairness.

We find no merit to Skrabonja's remaining arguments to the contrary, substantially for the reasons expressed by the ALJ in the written decision adopted by the CSC. We add only the following comments.

Skrabonja's argument that he lied to investigators because they coerced his statements by threatening him with criminal charges is belied by his testimony "[t]hat lying is all on me." And, in any event, Gardner testified he did

14

not speak to Skrabonja about criminal charges and Skrabonja did not know whether he was facing any charges.

Also, Skrabonja's Fifth and Sixth Amendment rights were not violated and BSP did not fail to follow policy that required it to alert the prosecutor of possible criminal charges both fail. The Fifth Amendment right against self-incrimination applies to "criminal case[s]," and the Sixth Amendment right to counsel applies to "criminal proceedings," U.S. Const. amends. V and VI, neither right applies to cases civil in nature. See, e.g., State v. Kennedy, 97 N.J. 278, 284-85 (1984); State v. Reed, 133 N.J. 237, 252 (1993). Nothing about Skrabonja's administrative investigation was criminal in nature. In fact, Skrabonja signed the Weingarten Administrative Rights form stating he understood the interview was part of an administrative investigation and not relating to criminal charges. Also, the Attorney General's Internal Affairs Policy and Procedure requires complaints to be thoroughly investigated, and immediate notification to county prosecutors only "[w]here preliminary investigation indicates the possibility of a criminal act on the part of the accused officer." Off. Att'y Gen., Internal Affairs Policy & Procedures (Rev. Nov. 1992). Here, Gardner thoroughly investigated the complaint against DeShields, which uncovered Skrabonja's misconduct. The inmate complaint alleged DeShields

extorted inmates, but did not accuse Skrabonja of any criminal misconduct. And Gardner's investigation did not lead to any criminal allegations or charges.

Equally without merit is Skrabonja's argument that his learning disability and being newly assigned to "Alpha" unit explained his conduct. Skrabonja testified his learning disability absolutely did not limit or impair his ability to perform his duties, which included identifying wrongful conduct. And, he testified this misconduct had occurred in other units during his nearly four years of being employed by BSP and he failed to report it. He had nearly four years before entering "Alpha" unit to realize the wrongfulness of his conduct, not just two days.

Skrabonja failed to provide any legitimate circumstances to mitigate his removal as a response to his severe misconduct or to otherwise render the CSC's final decision to remove him shocking to our sense of fairness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16