**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3837-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEROME BEARFIELD, a/k/a
JEROME W. BEARFIELD, JR.,

    Defendant-Appellant.

_____

Submitted September 30, 2025 – Decided October 30, 2025

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-08-2362.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jerome Bearfield appeals from a June 10, 2024 Law Division order denying his application for post-conviction relief (PCR) without an evidentiary hearing. On appeal defendant alleges ineffective assistance of counsel by both his attorney at his initial central judicial processing (CJP) appearance and his attorney at sentencing. Specifically, he claims: (1) CJP counsel failed to adequately advise him against requesting a meeting with detectives after he was arrested and charged with murder and provided a statement without counsel present, and thereafter improperly brokered that meeting; and (2) sentencing counsel inadequately presented available mitigating factors before the sentencing court. Having reviewed the record in light of applicable legal principles, we affirm.

I.

We derive the following salient facts and procedural history from the record and our decision affirming defendant's convictions and sentence on direct appeal, State v. Bearfield, No. A-1498-19 (App. Div. Nov. 18, 2021) (slip op. at 17). After the 2018 fatal shooting of Basil Howard following a motor vehicle collision, defendant was charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a weapon for an unlawful purpose,

N.J.S.A. 2C:39-4(a)(1).  Following an N.J.R.E. 104(c) hearing, the trial court determined two statements defendant provided to law enforcement were admissible at trial, and defendant subsequently pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(l), and unlawful possession of a weapon.

A.  Defendant's Statements to Law Enforcement

Law enforcement located defendant after reviewing surveillance footage that captured the collision and the shooting, which took place on a roadway in East Orange in the early morning of May 5, 2018.  Bearfield, slip op. at 3.  Six days later, defendant surrendered to police after they obtained search warrants for his home and his mother's home, and a warrant was issued for his arrest. Ibid.

Essex County Prosecutor's Office (ECPO) Detective Robert O'Neal conducted a formal interview of defendant.  Id. at 4.  After waiving his Miranda[1] rights, defendant gave the first of two statements to investigators.  Ibid. Defendant advised "he was driving with his mother from a party when a car struck his in the rear.  Defendant was about to exit the car but heard shots and drove away."  Ibid.  Defendant also "identif[ied] still surveillance photos" of his

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-3837-23

car; and when the statement concluded, defendant was transported to the Essex County jail. Ibid.

The next day, defendant appeared in CJP court. Ibid. We previously summarized the circumstances leading up to defendant's second formal statement:

> On Saturday, May 12, 2018, O'Neal received word from his superior, Lieutenant Carter,[2] that an assistant prosecutor had contacted Carter and said defendant wished to speak with him. The assistant prosecutor and defense counsel at the Rule 104 hearing stipulated to the introduction of a memo from [the] Assistant Prosecutor in lieu of calling [the assistant prosecutor] as a witness. The prosecutor's memo to the file . . . said:
>
>> On Saturday, May 12, 2018, I received a text message from [the] Assistant Deputy Public Defender . . . indicating he was covering CJP court and . . . defendant requested to speak to . . . Carter of this office. The message was received via SMS. A screen shot of the message is saved and attached to this memo.

---

[2] As we noted in our prior opinion, Carter's first name was not contained in the record. Id. at 5 n.4.

The text message said:  "Saturday 3:51 p.m.  Hey bud, sorry to bug you on the weekend but I was just covering CJP, Jerome Bearfield, on homicide came up.  Bearfield requested to speak to . . . Carter of ECPO.  Just passing along the request."

[Id. at 5.]

Later the same day, Carter, O'Neal, and two additional detectives proceeded to the jail where they met with defendant.  With a handheld recorder, they conducted an interview that began with O'Neal asking:  "I was advised today by my supervisor, Carter, that you . . . had somebody reach out to the Prosecutor's Office and you wish[ed] to speak to us.  Is that correct?"  Defendant responded, "Correct."  Id. at 6.  O'Neal again issued defendant his Miranda warnings, which defendant waived, and indicated he wished to provide a statement.  Thereafter, as we recounted:

> Defendant proceeded to tell the detectives that when the accident occurred, he exited his car to approach the car behind him.  That driver exited the car and the trunk "popped" open; defendant was "intoxicated" and "scared."  When the other driver "went to the trunk," defendant said he "didn't allow him to come back up with nothing in the trunk."  To "protect [him]self," defendant shot the man five times with a ".38 Smith & Wesson."
>
> [Ibid.]

At the N.J.R.E. 104(c) hearing, the trial court found the statement admissible, concluding defendant elected to speak after a knowing, intelligent,

and voluntary waiver of his right to counsel. Id. at 8. The court found neither CJP counsel nor defendant demanded that defendant have an attorney present during either of the interviews. Further, the court noted:

> All too often we see many defense counsel write a letter to the police or the Prosecutor's Office, hey, I . . . represent so-and-so, do not speak to him without me being present. This was just sort of the opposite. This was initiated by the Public Defender and the clear implication was that, hey, it's okay for you to speak to my client. . . . [H]e wants to speak to you.

Thus, the trial court found no Miranda violation as defendant did not invoke his right to counsel.

B. Plea and Sentencing Proceedings

Thereafter, pursuant to a negotiated plea agreement, defendant pled guilty to an amended charge of aggravated manslaughter. In exchange, the State recommended a sentence of twenty-five years' imprisonment. In providing the factual basis for his guilty plea, defendant admitted he drove his car while in possession of a loaded firearm without a permit when he was rear-ended by Howard's vehicle. Defendant explained he exited his car, approached Howard, pointed his loaded firearm, and shot him multiple times, causing his death. Defendant agreed he fired "knowing [Howard] could die, but not really caring whether he did or not." He further conceded "at that time . . . [Howard] did not

6

A-3837-23

pose an immediate threat to [him] . . . . [Howard] was out of his car. [But] he was not threatening [defendant] at that point."

Defendant's sentencing counsel provided a written submission in advance of the sentencing proceeding. In his written submission, sentencing counsel asserted,

> in light of the character letters attached, the defendant will be requesting at sentencing that the court consider mitigating factors (3) [(defendant acted under strong provocation)], (4) [(there were grounds tending to excuse or justify defendant's conduct, though not constituting a defense)], (5) [(the victim induced or facilitated the offense)], (8) [(defendant's conduct was unlikely to recur)], (9) [(defendant's character and attitude indicated he was not likely to commit another offense)], (11) [(imprisonment would cause excessive hardship to defendant and dependents)] and (12) [(defendant's cooperation with law enforcement)].

At the hearing, sentencing counsel argued the mitigating factors "at their height would actually outweigh the aggravating factors, but at the minimum would have the aggravating and mitigating factors stand in equipoise." Counsel asked the court to consider defendant's difficult past, his young child, his "thoughtful and remorseful" confession after turning himself in under "his own volition," and his remorse and regret over what counsel characterized as defendant "reacting" "rashly, stupidly, and unfortunately" in the circumstances. Counsel indicated, although this did not "amount to a defense," defendant was

7

contrite for what was a "bad decision," by someone who is not a "bad person," and should not be judged by this "one night." Counsel requested a twenty-year prison term.

The sentencing court cited defendant's "three prior [indictable] convictions," his decision "to carry a loaded weapon" and, "with his mother present, . . . get out and shoot the man who had committed the sin of rear-ending him in a traffic collision." The court considered the sentencing factors under N.J.S.A. 2C:44-1, and found aggravating factors (3) risk of another offense, (6) nature and extent of prior record, and (9) the need to deter defendant and others applied, and determined they substantially outweighed the non-existent mitigating factors. See N.J.S.A. 2C:44-1(a)(3),(6), and (9). The court sentenced defendant in accordance with the plea agreement to twenty-five-years' imprisonment with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, for aggravated manslaughter conviction and a concurrent twelve-and-one-half-year period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c), for possession of the firearm.

C.  Direct Appeal

On direct appeal, defendant argued the trial court incorrectly found his second statement admissible when he "did not knowingly, intelligently, and voluntarily waive his rights against self-incrimination because the interrogating officer, knowing that defendant was assigned counsel, failed to question defendant whether he wanted to waive his rights in light of the fact that he was represented by counsel but his attorney was not present."  Bearfield, slip op. at 2-3.

We rejected defendant's comparison of the circumstances surrounding his second statement with those presented in State v. Reed, 133 N.J. 237 (1993), where police violated the defendant's right to counsel by failing to inform the defendant that counsel wished to speak to him prior to custodial interrogation. We found that, here, defendant was aware he was represented and affirmatively requested his counsel contact investigators to advise them defendant wished to speak to them.  Bearfield, slip op. at 10-11.  We noted defendant's circumstances more closely aligned with those in State v. Kennedy, 97 N.J. 278, 288-89 (1984), where the defendant's attorney told police the defendant wanted to provide information, the defendant waived his Miranda rights without counsel present, and provided incriminating information.  Bearfield, slip op. at 13-14.  We noted

9

the Court in Kennedy found no obligation on the prosecutor to further safeguard the defendant from voluntarily waiving his right to counsel and speaking to law enforcement given defense counsel's role in setting up the interview.  Id. at 14.

We affirmed the trial court's finding that the State had not violated defendant's Miranda rights in these circumstances when the interview arose from defense counsel's initiation on defendant's behalf and at defendant's request. Ibid.  We noted, "The attorney imposed no conditions precedent to the investigators commencing the interview, and O'Neal confirmed with defendant that he had asked to speak with the investigators before the interrogation even began."  Ibid.

We also affirmed the sentence, rejecting defendant's claim the "[sentencing] court's rejection of mitigating factors was not supported by competent, credible evidence in the record."  Id. at 17.

D.  PCR Proceedings

On August 25, 2023, defendant filed a pro se petition for PCR, generally asserting ineffective assistance of counsel.  Thereafter, with the assistance of assigned counsel, defendant filed an amended petition, raising several claims against CJP counsel and sentencing counsel.  PCR counsel also filed a supporting supplemental brief, alleging ineffective assistance of counsel,

claiming his "CJP attorney facilitated [defendant's] giving an uncounseled statement to law enforcement," and his trial "[c]ounsel failed to present information . . . at sentencing that would have supported mitigating factors."

At oral argument, PCR counsel contended CJP counsel was deficient for "allowing [defendant] without much resistance, without much fight, without any legal advice to the contrary, allowing him to go speak with law enforcement, and then going and doing so un-counseled." Regarding sentencing counsel's performance, PCR counsel argued, "had there been an investigation, there might have been more information to present at the sentencing argument about . . . a self-defense component to this case." The State countered it was "the first statement that doomed [defendant]," it was not uncommon for defendants to meet with investigators without their counsel once they've decided they wish to provide information, and it would have been unethical for CJP counsel to disregard defendant's direction.

On June 10, 2024, the PCR court denied defendant's petition, and in its accompanying written decision, addressed the claims under the Strickland[3] two-part test. Regarding CJP counsel, the court initially noted defendant's decision to offer information about the shooting "was likely a factor that the State

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

A-3837-23

considered during plea negotiations," and "aided in reaching the negotiated plea." Accordingly, the court rejected any claim that CJP's conduct rendered it "impossible" to negotiate any favorable plea negotiations.

The PCR court next emphasized the trial judge deemed the statement admissible as knowingly, intelligently, and voluntarily provided, and that decision was affirmed on appeal. Thus, the court reasoned, "regardless of whether [defendant's] CJP attorney advised him not to speak to law enforcement, [defendant] was well aware of the effects of waiving his Miranda rights and giving a statement." The court specifically found, irrespective of whether CJP counsel advised defendant not to submit to an interview without counsel present, defendant knew he had the right to have counsel with him and waived that right. The court indicated defendant's conduct reflected his desire to speak to investigators and his direction to counsel to contact investigators on his behalf; thus, the court noted, CJP counsel was not free to simply disregard defendant's strategic choice.

The PCR court further recognized defendant's decision to provide additional information "was not an irrational decision," particularly after defendant learned the evidence against him at the CJP hearing. The court found, without the second statement, it was "unlikely" defendant would have secured

12

such a favorable plea offer. Alternatively, the court envisioned risks if defendant proceeded to trial, as his first statement placing himself at the scene but denying the shooting would have "established inconsistencies before the jury." The PCR court cited Kennedy, 97 N.J. at 289, and found it "clear" that it was "defendant's desire to talk to the detectives," aware he had counsel and could invoke his right to have counsel present.

Finally, the PCR court held "even if CJP counsel acted inappropriately," defendant had not established prejudice, namely, "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Specifically, as to the second prong of Strickland, the PCR court noted

> the State had a very strong a case against [defendant]. The homicide was caught on surveillance video, as well as, video from the bar shortly before the murder clearly showing [defendant] wearing the same clothes as the shooter. Additionally, [defendant] put himself at the murder scene in his first statement to detectives on May 11, 2018. There is not a reasonable probability that [defendant] would have insisted on going to trial and risk[ed] the likelihood of being convicted of murder and facing a sentence far in excess of the 25 years he pled guilty to.

Accordingly, the PCR court held defendant failed to make a prima facie showing of ineffective assistance from CJP counsel.

A-3837-23

Regarding defendant's challenge to the adequacy of sentencing counsel's presentation of mitigating factors, the PCR court cited this court's decision on direct appeal in which we concluded no mitigating factors were supported by credible evidence in the record. The PCR court also highlighted sentencing counsel's arguments advancing mitigating factors both in its submission to the court and at the sentencing hearing. The court again analyzed the mitigating factors and found none applied, rejecting defendant's claims against sentencing counsel.

## II.

On appeal defendant reprises his arguments made before the PCR court. He argues:

[POINT I]

DEFENDANT MADE A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR [CJP] COUNSEL'S FAILURE TO REPRESENT HIM AT THE TIME A STATEMENT WAS MADE TO POLICE AND FOR COUNSEL'S FAILURE TO ADEQUATELY REPRESENT HIM AT SENTENCING.

A. APPLICABLE LAW.

B. DEFENDANT'S CONS[T]ITUTIONAL RIGHT TO COUNSEL WAS VIOLATED WHEN [CJP] COUNSEL FACILITATED A WAIVER OF THAT RIGHT DURING DEFENDANT'S SECOND

14

STATEMENT TO THE POLICE WHICH DIRECTLY LED TO HIS INCRIMINATION.

C.  DEFENDANT MADE A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR [CJP] COUNSEL'S FAILURE [TO] REPRESENT HIM AT A TIME A STATEMENT WAS GIVEN TO THE POLICE.

D.  DEFENDANT MADE A PRIMA FACIE CLAIM OF [IN]EFFECTIVE ASSISTANCE OF COUNSEL FOR [SENTENCING COUNSEL'S] FAILURE TO ADEQUATELY ARGUE MITIGATING FACTORS AT SENTENCING.

"We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "Where . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

An evidentiary hearing is warranted only when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is

15

necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "a court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory, or speculative"). Indeed, "if the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002).

The United States Supreme Court in Strickland, 466 U.S. at 687, established a two-part test to determine whether a defendant has been deprived of the effective assistance of counsel, which the New Jersey Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987), under New Jersey's Constitution. Failure to establish either prong requires the denial of an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

A-3837-23

To satisfy the first prong, defendant must demonstrate counsel's performance was deficient and "fell below an objective standard of reasonableness," meaning, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. Defendants "must allege specific facts and evidence supporting [their] allegations." Porter, 216 N.J. at 355. "Bald assertions" will not suffice. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Further, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second prong, a defendant must "affirmatively prove" there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694). "Although a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, . . . and if not, to dismiss the claim without determining

whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted); see also State v. Alvarez, 473 N.J. Super. 448, 455-56 (App. Div. 2022).

Ultimately, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Strickland, 466 U.S. at 691. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693. To show sufficient prejudice when a conviction results from a guilty plea, defendant must show a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial," State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)); see also Gaitan, 209 N.J. at 351, and that "a decision to reject the plea bargain would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Against this legal backdrop, we first address and reject defendant's claim regarding CJP counsel's conduct and failure to properly advise defendant against providing an uncounseled statement to investigators. We recognize defendant had been arrested and charged with murder at the time CJP counsel advised the assistant prosecutor, through a text message, that defendant wished to speak with

investigators. We similarly acknowledge defendant's assertion that CJP counsel never advised defendant of the potential perils of such a meeting with detectives. Defendant also claims counsel never recommended that counsel accompany defendant should he elect to initiate a second meeting and provide another statement.

We previously determined defendant voluntarily waived his right to counsel and, although defendant was represented at the time he elected to speak to detectives, defense counsel's absence at that meeting did not render defendant's subsequent uncounseled confession violative of <u>Miranda</u>'s safeguards. <u>Bearfield</u>, slip op. at 14. However, our inquiry on direct appeal addressed the propriety of law enforcement's conduct, not CJP counsel's.

Nevertheless, assuming without deciding CJP counsel's actions were constitutionally deficient, we are satisfied defendant failed to show prejudice resulted from counsel's conduct. We are not persuaded that, "but for" CJP counsel's failure to advise against speaking to detectives without an attorney or accompany him to the second interview, defendant would not have pled guilty. We view defendant's claim in light of the circumstances known to defendant at the time he elected to speak.

At the time defendant chose to reinitiate contact with detectives and offer additional information, he had been arrested for murder. He had seen at least a proffer of the evidence against him, including video surveillance of the collision and the shooting of the unarmed victim after the shooter's car was rear-ended. Nearby video captured defendant dressed in clothing matching that of the shooter, and police traced the shooter's car to defendant. Defendant had already voluntarily offered information to investigators, admitting he was the driver of the car struck by the victim, and placed himself at the scene of the shooting.

Faced at the CJP hearing with evidence contradicting his previous denial in multiple aspects, defendant asked CJP counsel to notify detectives he wished to speak with them. Defendant again waived his Miranda rights, including his right to have counsel present, and willingly corrected his previous statement, resulting in a plea to a reduced charge and limited defendant's sentencing exposure. He has not demonstrated that his decision to waive counsel—perhaps in the hopes of gaining favor with the State or to counteract the repercussions of his initial denial—resulted from CJP counsel's allegedly deficient performance. He did not establish counsel's alleged failures caused him to plead guilty to his detriment. Defendant also failed to show, if properly counseled, he would have

20

negotiated a better plea or proceeded to trial, risking a murder conviction, and obtained a more favorable outcome.

Importantly, pursuant to the negotiated plea agreement, the State's recommended sentence—capped at twenty-five years' imprisonment—undercut the maximum thirty-year sentence for aggravated manslaughter, and the maximum life sentence and the thirty-year mandatory minimum term for murder he would have faced if convicted after a trial. Defendant failed to show different advice from CJP counsel would have changed the outcome.

Similarly, we reject defendant's claims that sentencing counsel's performance was deficient. The record reveals defense counsel raised mitigating factors in both the written submission to the court and at the sentencing hearing. The sentencing court's findings confirmed the court considered the circumstances surrounding the shooting and defendant's personal characteristics in fashioning its sentence. As we determined on direct appeal:

> The judge specifically addressed the mitigating factors . . . . [and] found that defendant did not act under strong provocation, noting that an auto accident "is in no way somehow grounds for [defendant] to do what [he] did," and he rejected mitigating factor four for the same reasons. The judge concluded the victim in no way induced or facilitated the homicide "just because his car struck [defendant's] car. It was an accident, an auto accident."

21

Defendant contends the judge minimized the circumstances he faced on the night of the shooting, reducing the incident to merely "an auto accident." He argues the judge failed to consider defendant's concern for his own safety and that of his mother, who was a passenger in his car. However, there was nothing in the record to indicate that the victim posed any threat to defendant. We defer to the judge's conclusion that none of the mitigating factors applied because they were not supported by credible evidence in the record.

[Id. at 16-17.]

Having reviewed the sentencing record, we are satisfied counsel's performance was not deficient. To the contrary, sentencing counsel advanced the precise mitigating information defendant claims was omitted. Further, the sentencing court's findings readily reflect its consideration of the proposed mitigating factors. Accordingly, the PCR court reasonably concluded counsel's advocacy at sentencing did not prejudice defendant. We therefore conclude defendant was not entitled to an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division